J-S63001-17

2018 PA Super 145

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| RICKY TEJADA | |
| Appellant | No. 24 WDA 2016 |

Appeal from the Order December 18, 2015
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002407-2015

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| RICKY TEJADA | |
| Appellant | No. 119 WDA 2016 |

Appeal from the Order January 11, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002407-2015

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| RICKY TEJADA | |
| Appellant | No. 170 WDA 2016 |

J-S63001-17

Appeal from the Order December 17, 2015
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002407-2015

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| RICKY TEJADA | |
| Appellant | No. 872 WDA 2016 |

Appeal from the Order March 9, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002407-2015

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| RICKY TEJADA | |
| Appellant | No. 892 WDA 2016 |

Appeal from the Order March 9, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002407-2015

BEFORE:   BOWES, J., SOLANO, J., AND FORD ELLIOTT, P.J.E.

OPINION BY BOWES, J.:                    **FILED  JUNE 1, 2018**

Ricky Tejada appeals from the judgment of sentence of four to eight years incarceration imposed following his convictions for two counts of

- 2 -

aggravated harassment by a prisoner. Appellant elected to act as his own counsel, but was removed from the courtroom due to his behavior during *voir dire*. The trial court, which did not appoint standby counsel and rejected Appellant's request for same, conducted the entire trial without any representation of Appellant's interests. We reverse.

Implicated herein is the defendant's constitutional rights to be present for trial, have counsel, and represent himself if he so wishes. The United States Supreme Court has not held that appointment of standby counsel is required when a defendant elects to represent himself.[1] It is, however, well-settled that a defendant may forfeit his right to be present for his trial. In this issue of first impression in Pennsylvania, we address an intersection of those lines of case law: whether a *pro se* defendant forfeits his right to representation when his behavior results in the loss of right to be present for trial. For the reasons that follow, we conclude that a defendant cannot forfeit his right of representation, and therefore vacate Appellant's judgment of sentence and remand for a new trial.

Appellate counsel previously filed a petition to withdraw from representation and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), which

---

[1] **See** Wayne R. LaFave, *et. al.*, 3 Crim. Proc. § 11.5(f) (4th ed. 2017) ("Although appellate courts have suggested that appointment of standby counsel is to be preferred, it is not constitutionally required.").

we denied. ***Commonwealth v. Tejada***, 176 A.3d 355 (Pa.Super. 2017).

We directed counsel to file a merits brief on the question of whether the trial

court erred in proceeding with trial after ordering Appellant's removal.

We previously set forth the factual and procedural history[2] of this

matter in our decision denying the petition to withdraw, which we reproduce

herein:

> Appellant elected to represent himself at trial. Appellant appeared for a scheduled jury trial on January 11, 2016, and the proceedings commenced with the trial court asking, "it's my understanding you are representing yourself; is that correct?" Appellant confirmed that he intended to act as his own attorney. Following a waiver colloquy, the trial court concluded that Appellant validly waived his right to counsel.
>
> . . . .
>
> Appellant then claimed that he was incompetent to proceed and demanded a competency hearing, which the trial court denied on the basis that Appellant's behavior did not indicate any incompetency. Following that discussion, the trial court informed Appellant that jury selection would proceed "as soon as we get a jury panel available."
>
> Following a recess the trial court asked, "[Appellant], I need to know if you are going to stay for your trial?" Appellant claimed that he was "not the defendant" and argued that the court "has no jurisdiction to proceed." Appellant does not appear to have been otherwise disruptive of the proceedings, as reflected by the fact that the trial court stated, "I'm going to allow you to remain, but if you disrupt the proceeding, in any way, you will be removed and the trial will go on without you."

_____

[2] This appeal lists multiple dockets due to several premature *pro se* notices of appeal, which were consolidated.

- 4 -

The jury panel then entered the room. Appellant requested to admit into evidence the *voir dire* sheets, claiming that the sheets were "illegible and incomprehensible because of the writing." Significantly, Appellant followed that statement with the following request:

> The defense also makes it known for the record he requires counsel. I told you numerous times I don't understand. You're trying to push the trial on me. I got a 6th Amendment right to counsel. It's not filled out and I told you, I'm asking for my constitutional 6th amendment right since you're forcing the trial on me improperly.
>
> THE COURT: Mr. Tejada, you waived your right to counsel.
>
> MR. TEJADA: And I got a constitutional right to get it reinstated.
>
> THE COURT: Excuse me. Mr. Tejada, I'm speaking. I didn't interrupt you and don't interrupt me. You waived your right to counsel approximately one hour ago before this [c]ourt. I went over the rights waiver in detail with you. You answered the questions appropriately and waived your right to counsel....

Appellant interjected, "The constitution doesn't put no restraints on when I can reinstate that right. I'm timely reinstating it." Following more discussion, the trial court stated, "[Y]our outbursts will not be tolerated, you will be removed from this courtroom, you will be tried *in absentia*." Finally, the trial court stated that Appellant could communicate with the court so long as he followed the rules, to which Appellant replied, "Then appoint standby counsel to communicate with the [c]ourt." The trial court repeated that outbursts would not be tolerated. The following exchange occurred:

> MR. TEJADA: So are you saying I'm denied the right to standby counsel? If not, appoint me counsel. Is that what you're saying for the record?

> THE COURT: I'm saying that we are going to begin *voir dire*.
>
> MR. TEJADA: If you conduct *voir dire*, then I need counsel.
>
> THE COURT: You already waived your right to counsel.
>
> MR. TEJADA: And I'm petitioning to reinstate in accordance with the Pennsylvania Rules of Criminal Procedure 120.
>
> The COURT: Well, it's too late at this point.
>
> MR. TEJADA: So you're waiving my right to counsel or standby counsel?
>
> THE COURT: All right. Take Mr. Tejada out, please.

*Id*. at 357–58 (footnotes and citations omitted).

We stated that the issue appeared to be one of first impression in this Commonwealth, and the parties' substituted briefs likewise view it as such. Appellant largely relies on precedents by our sister courts who have addressed this issue. The Oregon Court of Appeals cogently summarized the position that Appellant asks this Court to take:

> [A] situation like that confronted by the trial court here raises "complex constitutional issues," because it implicates three related but distinct Sixth Amendment rights: (1) the right to be present at trial; (2) the right to self-representation; and (3) the right to representation. Persuaded by the Ninth Circuit's analysis in **United States v. Mack**, 362 F.3d 597 (9th Cir. 2004), we held that a defendant may forfeit the first two of those rights by misconduct, but does not forfeit the third: "although a defendant who acts out at trial may forfeit the right to be present and the right to self-representation in the proceeding, the defendant does not also forfeit the right to any representation at trial."

Consequently, because a criminal defendant does not forfeit the right to representation by misconduct (only the rights to self-representation and to be present), "after a trial court has removed a *pro se* defendant for his or her misconduct, the trial court cannot proceed in the defendant's absence unless and until the trial court has either secured the defendant's waiver of his or her right to representation at trial or has taken some other course of action that protects the defendant's right to representation, which may include the appointment of counsel." *Id.* at 185, 341 P.3d 229.

*State v. Lacey*, 385 P.3d 1151, 1152–53 (Or.Ct.App. 2016), *review allowed*, 393 P.3d 1176 (Or. 2017) (emphasis added). **Accord People v. Ramos**, 210 Cal.Rptr.3d 242 (Cal.Ct.App. 2016) (holding that involuntary removal of *pro se* defendant violates Sixth Amendment); **People v. Cohn**, 160 P.3d 336, 343 (Colo.App. 2007) (holding a *pro se* defendant's conduct did not result in loss of right to representation, as "the trial court could have found defendant had waived his right to proceed *pro se* and appointed counsel to represent defendant's interests during the time he was excluded from the courtroom.").

The Commonwealth does not take a position on whether we should accept or reject the foregoing analysis. Its argument is reproduced in full:

The Appellant's persistent belligerence resulted in the trial proceeding in his absence. The Appellant had sufficient opportunity to amend his behavior and declined to do so. Under the principles of Pa.R.Crim.P. 1117 and **Commonwealth v. Ford**, 650 A.2d 433, 440 (Pa. 1994) the case proceeded in the Appellant's absence, as was appropriate and within the sound discretion of the trial judge. The Appellant's decisions and behaviors, despite repeated warnings, constituted an implicit waiver of his right to be present at trial. If the accused is abusive

and disruptive to the proceedings it is not an abuse of discretion for the trial judge to have the defendant removed from the courtroom. ***Commonwealth v. Basemore***, 582 A.2d 861, 867-68 (Pa. 1990).

Even accounting for the analysis of the Ninth Circuit Court of Appeals in ***United States v. Mack***, 362 F.3d 597 (2004), it cannot be supposed that a criminal defendant who has adamantly rejected representation, spurned stand-by counsel and then due to their own disruptive behavior waives his own presence can then be forced, in his absence, to have counsel imposed against his will. As unusual as these circumstances may be, the answer cannot be to impose upon the defendant representation they not only did not seek but specifically rejected.

Commonwealth's brief at 2-3. Beyond these statements, the Commonwealth has not developed why this Court should not, as Appellant urges, follow the lead of our sister courts and conclude that "Where a criminal case is tried against a vacant defense table, the adversarial process has broken down, and cannot ensure that the convictions rendered are fair and reliable." ***Lacey***, ***supra*** at 1153. Instead, the Commonwealth insists that relief is not warranted "[e]ven accounting for [that] analysis," but without addressing that analysis. The Commonwealth essentially asks this Court to affirm Appellant's judgment of sentence as a consequence of his belligerence. For the reasons that follow, we are persuaded by the analysis set forth in ***Lacey***, which we find is in line with the pertinent United States Supreme Court decisions and Pennsylvania pronouncements in related contexts. We hold that Appellant's Sixth Amendment right to counsel was denied, and grant him a new trial.

**I**

This appeal poses a pure question of law, to which we apply a *de novo* standard of review. *See Commonwealth v. Lucarelli*, 971 A.2d 1173 (Pa. 2009) (applying *de novo* review to whether doctrine of forfeiture justified denial of right to counsel). Appellant claims a total deprivation of the right to counsel, which is a structural error mandating a new trial without any inquiry into prejudice. *See United States v. Cronic*, 466 U.S. 648 (1984) (complete denial of counsel is presumptively prejudicial); *Commonwealth v. Martin*, 5 A.3d 177, 192 (Pa. 2010) ("[T]he *Cronic* presumption of prejudice may also be appropriate upon a showing that some structural error or defect so gravely affected the trial mechanism and framework that a constitutional deprivation occurred.").

As set forth *supra*, Appellant asks this Court to apply the legal framework announced in *Lacey*. We previously reproduced the Commonwealth's argument in response, which we now examine in more detail. The Commonwealth cites *Commonwealth v. Ford*, 650 A.2d 433 (Pa. 1994), which states that a defendant may waive his right to be present for trial, and *Commonwealth v. Basemore*, 582 A.2d 861 (Pa. 1990), which involved the removal of a defendant during trial due to his poor behavior. Together, the Commonwealth asserts that the trial court did not err by barring Appellant from the courtroom. Building upon this, the Commonwealth next suggests that the failure to appoint any attorney to

represent Appellant's interests following removal was proper, by framing the assignment of standby counsel as the equivalent of imposing counsel against Appellant's will.

As we shall explain, the issue of removal is distinct from the right of representation by counsel, and the related right of self-representation. In turn, we find that the Commonwealth's assertion that appointment of standby counsel would violate Appellant's choice to represent himself fails to recognize what interests the underlying right of self-representation is designed to protect. We begin by setting forth the relevant rights in more detail.

## A

## Right to be present at trial

A criminal defendant has both a rule-based right to be present for trial, Pa.R.Crim.P. 602, as well as a constitutional right. The United States Supreme Court has explained that this right stems from the Confrontation Clause of the Sixth Amendment to the United States Constitution. "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970). In *Allen*, the High Court rejected the determination of the United States Court of Appeals for the Seventh Circuit's determination that a defendant can never be removed from the courtroom. The Seventh Circuit had held that the Sixth Amendment

- 10 -

right to be present is absolute, and that a trial court must deal with unruly defendants by other means, including shackles and gags. The Supreme Court disagreed.

> [W]e explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

*Id*. at 343 (footnote omitted).

The Commonwealth cites **Basemore**, which applied **Allen**, as relevant to the trial court's decision to continue proceedings following ejectment. **Basemore**, **supra** at 868 ("[T]he court followed the guidelines set forth in **Allen**, **supra**, by warning Appellant before removing him from the courtroom and by giving Appellant the opportunity to return at any time provided he agreed to conduct himself properly."). The Commonwealth states that under **Basemore**—and, by extension, the constitutional right addressed in **Allen**—the trial court's decision to proceed in Appellant's absence was proper.

Appellant's behavior cannot be ignored, but, contrary to the Commonwealth's urging, we cannot assume that the considerations justifying a limitation upon the right to be present for trial automatically

- 11 -

extend to denying any representation of the defendant's interests. The Commonwealth's analysis glosses over the fact that in **Basemore** and **Allen** the defendants were represented by counsel and the trials largely proceeded as they otherwise would have had the defendants remained in the courtroom.

In contrast, Appellant's removal herein, purportedly justifiable under **Allen**, resulted in the elimination of the adversarial process as the Commonwealth was permitted to proceed without any opposition. "The Sixth Amendment provides that an accused shall enjoy the right 'to have the Assistance of Counsel for his defense.' This right, fundamental to our system of justice is meant to assure fairness in the adversary criminal process." **United States v. Morrison**, 449 U.S. 361, 364 (1981) (citing **Gideon v. Wainwright**, 372 U.S. 335, 344 (1963)). The absence of an adversary necessarily resulted in the loss of other critical procedures, including cross-examination of the prosecution's witnesses. **Cf. Crawford v. Washington**, 541 U.S. 36, 61 (2004) ("To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination."). Removing Appellant meant that the Commonwealth encountered no opposition, raising grave doubts as to the validity of the verdict.

- 12 -

Indeed, Appellant does not complain that his removal was unjustified, and he effectively concedes that the trial court's decision to remove him was within the court's discretion.

> In the present case, the Appellant was removed from the courtroom after repeated warnings from the trial court to correct his behavior. **And while it would seem that the removal from the courtroom by the trial court is supported on the record**, what is problematic is that the trial court permitted the Commonwealth to proceed with no counsel present for the Appellant as prior to the Appellant's removal, the trial court permitted the Appellant to proceed *pro se*.

Appellant's brief at 12 (emphasis added).

To be sure, the elimination of the adversarial process was a consequence of the trial court's decision to bar Appellant from the courtroom. Nevertheless, the Commonwealth's analysis does not account for the fact that the singular act of removing Appellant from the courtroom affected two separate rights: the right to be present, and the right to counsel. *Allen* sanctions the elimination of Appellant's right to be present as the result of his poor behavior. The question, however, is whether loss of the right to be present permitted the trial court to deprive him of his right to counsel due solely to his *pro se* status.

### B

### Right to self-representation

Appellant, as an indigent, would have been represented by appointed counsel but for his decision to represent himself. We thus now address the

right to self-representation. In **Commonwealth v. Starr**, 664 A.2d 1326

(Pa. 1995), our Supreme Court noted that a defendant

> has a long-recognized constitutional right to dispense with counsel and to defend himself before the court. **Faretta v. California**, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975) (implicit in the structure of the Sixth Amendment is the right of a criminally accused to conduct his own defense); **Commonwealth v. Szuchon**, 506 Pa. 228, 250, 484 A.2d 1365, 1376–1377 (1984) (an accused has a right to conduct his own defense pursuant to Article 1, Section 9 of the Pennsylvania Constitution). In short, this highly personal constitutional right operates to prevent a state from bringing a person into its criminal courts and in those courts force a lawyer upon him when he asserts his constitutional right to conduct his own defense. **Faretta, supra**, at 807, 95 S.Ct. at 2527.

**Id**. at 1334–35 (footnotes omitted).

As **Starr** indicated, a defendant's right to defend himself before a

tribunal is implicit in the Sixth Amendment, which is binding on the States

through the Fourteenth Amendment. **Faretta** determined that the right of

self-representation is a corollary to the right to counsel.

> [The Sixth Amendment] speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many

areas.  This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction.

*Faretta*, *supra* at 820-21 (citations and footnote omitted).[3]  Additionally,

*Faretta* viewed the ability to reject a State appointed attorney as implicating autonomy.  "And whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice."  *Id*. at 833-34 (footnote omitted).

Later cases held that the right to self-representation is not absolute. *McKaskle v. Wiggins*, 465 U.S. 168 (1984), offers some parallels to the present circumstances as the question therein was whether standby counsel could act absent express consent by the defendant.  We recently summarized *McKaskle* as follows:

---

[3] In *Indiana v. Edwards*, 554 U.S. 164 (2008), the High Court explained that *Faretta*

implied that right from: (1) a nearly universal conviction, made manifest in state law, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so; (2) Sixth Amendment language granting rights to the "accused"; (3) Sixth Amendment structure indicating that the rights it sets forth, related to the fair administration of American justice, are personal to the accused; (4) the absence of historical examples of *forced* representation, and (5) respect for the individual[.]

*Id*. at 170–71 (cleaned up).

[T]he High Court considered whether *Faretta* permitted the participation of standby counsel even without the express consent of the defendant. Therein, Wiggins informed the court he would proceed *pro se* and "objected even to the court's insistence that counsel remain available for consultation." *Id.* at 172, 104 S.Ct. 944. That request was denied and the trial judge appointed two attorneys to act as standby counsel. Throughout the trial, Wiggins occasionally consulted with standby counsel, and the attorneys sometimes initiated private consultations. The Court of Appeals held that Wiggins' Sixth Amendment rights were "violated by the unsolicited participation of overzealous standby counsel[.]" *Id.* at 173, 104 S.Ct. 944 (citation omitted).

The High Court reversed and held that *Faretta*'s "logic ... indicate[s] that no absolute bar on standby counsel's unsolicited participation is appropriate or was intended." *Id*. at 176, 104 S.Ct. 944. The Court explained:

> In determining whether a defendant's *Faretta* rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way. *Faretta* itself dealt with the defendant's affirmative right to participate, not with the limits on standby counsel's additional involvement. The specific rights to make his voice heard that Wiggins was plainly accorded, form the core of a defendant's right of self-representation.

*Id.* at 177, 104 S.Ct. 944 (internal citation omitted).

*Commonwealth v. Tighe*, 2018 PA Super 86 (Pa.Super. 2018) (footnote omitted). Appellant did not expressly consent to standby counsel, but neither did he reject it.

### C

### Appointing standby counsel would not violate *Faretta*

We now address the Commonwealth's claim that appointing counsel to represent Appellant's interests implicates the dignity rationale, *i.e.*, its

- 16 -

position that the trial court could not "impose upon the defendant representation [Appellant] did not seek[.]" Commonwealth's brief at 3. That assertion sounds plausible in that appointment of standby counsel would eliminate Appellant's "actual control over the case he chooses to present to the jury." *McKaskle*, *supra* at 178. Moreover, participation by standby counsel would have "destroy[ed] the jury's perception that the defendant [was] representing himself" because standby counsel, not Appellant, would present the defense. Thus, the right of self-representation would not be honored if standby counsel represented Appellant's interests.

However, narrowly focusing on the jury's perception loses sight of the forest for the trees. *Faretta* and *McKaskle* both involved defendants who remained in the courtroom and could actually present a defense. *McKaskle* states that "the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *Id*. at 177. Herein, Appellant had no chance to present a case due to his removal. Thus, the appointment of standby counsel to represent Appellant's interests, while "destroy[ing] the jury's perception" that Appellant was representing himself, was surely preferable to having no defense at all. "[A]ny person haled into court . . . cannot be assured a fair trial unless counsel is provided for him." *Gideon*, *supra* at 344.

In this respect, we note that the dissenting Justices in *Faretta*, who would have held that there is no constitutional right to act as one's own

- 17 -

counsel, were concerned with the risk of injustice associated with trials conducted by *pro se* defendants.

> The Court seems to suggest that so long as the accused is willing to pay the consequences of his folly, there is no reason for not allowing a defendant the right to self-representation. That view ignores the established principle that the interest of the State in a criminal prosecution 'is not that it shall win a case, but that justice shall be done.' **Berger v. United States**, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). . . .
>
> . . . .
>
> Nevertheless, the Court concludes that self-representation must be allowed despite the obvious dangers of unjust convictions in order to protect the individual defendant's right of free choice. As I have already indicated, I cannot agree to such a drastic curtailment of the interest of the State in seeing that justice is done in a real and objective sense.

**Faretta**, **supra** at 849-51 (Blackmun, J., dissenting) (some citations omitted). While the High Court rejected the dissenting Justices' view that a State's interest in reliable verdicts cannot trump the right to waive the assistance of appointed counsel, that hardly suggests that the Court would completely dispense of the desire to effect justice when a defendant, representing himself, acts in a manner warranting his removal from the courtroom. In this vein, **Faretta** rejected the notion that granting a constitutional right of self-representation would let disruptive defendants run roughshod.

> We are told that many criminal defendants representing themselves may use the courtroom for deliberate disruption of their trials. But the right of self-representation has been recognized from our beginnings by federal law and by most of

the States, and no such result has thereby occurred. **Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct**. [**Allen**, **supra** at 337]. Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.

*Id*. at 834 n.46 (emphasis added).

Notably, this passage states that the consequence of behavior warranting removal under **Allen** is termination of the right to self-representation, **not** forfeiture of the right to any representation, as occurred herein. **Faretta** followed the citation to **Allen** with a suggestion that appointment of standby counsel is permissible, even over an objection by the defendant. Thus, the Commonwealth's suggestion that appointing standby counsel in this case would necessarily conflict with the right of self-representation is unavailing.

**D**

**Appellant did not categorically reject standby counsel**

Worse, even if we were to accept that the objection to standby counsel would settle this matter, we must note that the record does not support that finding. The Commonwealth claims that Appellant "adamantly rejected representation, [and] spurned stand-by counsel." Commonwealth's brief at 3. As quoted *supra*, Appellant waived his right to counsel, and, approximately one hour later, changed his mind and asked to have counsel

reinstated.[4] The trial court refused, informing Appellant that he had completed the colloquy. Appellant responded, "Then appoint standby counsel to communicate with the [c]ourt." ***Tejada***, ***supra*** at 358 (citing transcript). Again, the trial court refused and, shortly thereafter, ordered Appellant removed from the courtroom. The last statement made by Appellant on the record was, "So you're waiving my right to counsel or standby counsel?" ***Id***. Thus, the Commonwealth's assertion that Appellant "spurned stand-by counsel" is unsupported. Therefore, we need not decide whether a trial court may override the wishes of a defendant who adamantly refuses the appointment of standby counsel, as that did not occur here.

**II**

_____

[4] The sole issue presented on this appeal is whether the trial court erred in proceeding with trial after removing Appellant, and not whether the trial court erred in failing to revisit Appellant's waiver of his right to representation. We note that the United States Supreme Court has not addressed that question:

> The other disputed question is whether, after a defendant's valid waiver of counsel, a trial judge has discretion to deny the defendant's later request for reappointment of counsel. In resolving this question in respondent's favor, the Court of Appeals first concluded (correctly) that "the Supreme Court has never explicitly addressed a criminal defendant's ability to re-assert his right to counsel" once he has validly waived it.

***Marshall v. Rodgers***, 569 U.S. 58, 61–62 (2013) (citation omitted). We note that Appellant's vacillation on the issue of appointed counsel occurred approximately one hour after his waiver and before *voir dire*, let alone the trial, had even started.

Having set forth the pertinent United States Supreme Court precedents, we now turn to Pennsylvania case law on this subject. As noted, this is an issue of first impression in this jurisdiction, and the cases discussed *supra* do not definitively answer the question of whether the trial court was required to appoint standby counsel to represent Appellant's interests.

As previously noted, multiple decisions by our sister courts have concluded that standby counsel was required under these circumstances. In light of the foregoing discussion, we agree and likewise conclude that a defendant may forfeit his right to be present for his trial and his right of self-representation through his behavior, but the trial court cannot continue proceedings (1) without a waiver of the right to representation, or (2) protecting the right to representation through other means, such as by the substitution of standby counsel.

This result aligns with Pennsylvania decisions in closely related contexts. In **Commonwealth v. Africa**, 353 A.2d 855 (Pa. 1976), our Supreme Court discussed the fact that the trial court therein bound and gagged several defendants, all of whom were representing themselves, during their joint criminal trial. Those proceedings eventually ended in a mistrial, and the court thereafter imposed imprisonment for contempt of court. In reviewing the sufficiency of the contempt convictions, our Supreme Court discussed **Allen**, **supra**, and expressed disapproval of the

gags.  Simultaneously, the Court recognized that disruptive defendants can impede the administration of justice.  To balance the rights of criminal defendants against the need to continue the trial, the decision suggested an alternative approach:

> Potentially disruptive defendants, like all defendants, have the right to represent themselves if counsel is validly waived. **Whenever a defendant seeks to represent himself, and particularly when he may be disruptive, standby counsel should be appointed**.  The court should explain to the defendant the standards of conduct he will be expected to observe.  If the defendant misbehaves, he should be warned that he will be removed from the court, **his right to represent himself will be considered waived, and the trial will continue in his absence with standby counsel conducting the defense**.  If the defendant again misbehaves, these measures should be taken. The defendant must be made to realize that his disruptive tactics will result only in his exclusion from the courtroom. His case will be tried according to law, in an attempt to do justice, whether he cooperates or not.

*Id*. at 864–65 (emphases added, footnotes omitted).

These observations were *dicta*, and **Africa** stated that standby counsel should be appointed, not that it must.[5]  In **Commonwealth v. Abu-Jamal**, 720 A.2d 79 (Pa. 1998), our Supreme Court applied this language from

---

[5] The applicable Rule states:

> **(D) Standby Counsel.** When the defendant's waiver of counsel is accepted, standby counsel may be appointed for the defendant. Standby counsel shall attend the proceedings and shall be available to the defendant for consultation and advice.

Pa.R.Crim.P. 121

*Africa* to a claim that the trial court denied the right of self-representation

when standby counsel was ordered to take control of trial:

> [W]hen Appellant requested to then proceed *pro se,* the court initially permitted such status and as a precaution appointed back-up counsel to assist Appellant. When it became apparent that Appellant was unable to properly conduct *voir dire,* the court first asked Appellant whether his back-up counsel could take over the questioning or whether he preferred the court to conduct *voir dire.* Appellant steadfastly refused to permit his back-up counsel to take part in any of the proceedings and argued vehemently that the court should not perform the *voir dire* questioning. We find that the court properly took over the questioning and then properly ordered that back-up counsel take control.
>
> All defendants, even those who may display the potential to be disruptive, have the right to self representation. [*Africa*, *supra*]. In such instances, however, it is advisable that stand-by counsel be appointed. *. . . .*
>
> .....
>
> Appellant next argues that he was improperly removed from the courtroom for significant portions of his trial. He claims that such removal violated his right to self-representation and was not properly tailored to assure continued communication with his counsel and assistance with his defense. Appellant claims he was not disruptive and asserts that it was error to remove him from the courtroom and thereby deny him of his right to represent himself. Disruptions, particularly those that are purposeful and persistent, are not to be tolerated as they threaten the court's ability to conduct a trial properly. *Africa*, at 619–620, 353 A.2d at 863. Removing a disruptive defendant from the proceedings is a permissible means for a court to discharge its duty to defend the judicial process. *Id*. at 620 n. 12, 353 A.2d at 863 n. 12, citing [*Allen, supra*].
> The record is replete with instances of Appellant's unwillingness to cooperate with the court and/or his counsel. He was oftentimes argumentative with the court, even after repeatedly being warned that if this disruptive behavior did not cease, he would be removed from the courtroom. Under these

circumstances the removal of Appellant from the proceedings was proper. ***See***, ***Africa***, ***supra****.*

***Id***. at 108–09 (footnote omitted).

Pursuant to these observations, the trial court had the discretion to appoint standby counsel and would have been justified in ordering that counsel to represent Appellant after removal, whereas the question here is whether the trial court was required to do so.

Applying the foregoing principles, we find that the trial court was not required to appoint standby counsel upon Appellant's waiver of his right to counsel. However, we find that its discretion to do so ended when Appellant was involuntarily removed from the courtroom.[6] ***See People v. Brante***, 232 P.3d 204 (Co.App. 2009) (holding that voluntary absence by *pro se* defendant who refused to participate and left courtroom did not result in

_____

[6] We recognize that, in the event this type of situation occurs in the future, a trial court may have to appoint standby counsel who is unfamiliar with the case if the trial court is forced to terminate the right of self-representation in the midst of trial. However, we think that point simply demonstrates the wisdom of ***Africa***'s suggestion that the better course is to appoint standby counsel from the start, especially in cases where the probability of disruptive behavior is high. The trial court noted that Appellant has a history of 179 prison misconducts, and, as our opinion denying the ***Anders*** petition noted, Appellant engaged in a series of absurd tactics in the instant proceeding, including raising spurious challenges to his competency, sought to charge the prosecutor with perjury, and maintained that the court lacked jurisdiction over his person.

Furthermore, a defendant whose behavior warrants the extreme step of forfeiture of the right to self-representation is hardly in a position to complain of the irregularities occasioned by those procedures.

Sixth Amendment violation; trial court not required to force standby counsel to present a defense in his absence). The trial court was not permitted to terminate Appellant's right to counsel due to its own failure to either appoint standby counsel on its own initiative or grant Appellant's request for standby counsel. While Appellant concedes that his behavior warranted removal, that justifies only the forfeiture of his right to be present, and termination of his right to represent himself.

"Removing a disruptive defendant from the proceedings is a permissible means for a court to discharge its duty to defend the judicial process." **Abu-Jamal**, **supra** at 109 (citing **Africa**, **supra** at 620 n.12). The Commonwealth asks us to find that justice was done because all Appellant had to do was behave. There is little need to defend the right to representation for *pro se* defendants who show the judicial system the respect it deserves. There is, however, much to be said for defending the integrity of the judicial system from those persons, like Appellant, who actively seek to diminish it. "Our system strives to be fair, even to those who . . . work the hardest to undermine it." **Lacey**, **supra** at 1153. It would demean the institution of this Court to affirm a verdict rendered without any semblance of adversarial proceedings, no matter how distastefully Appellant behaved at this trial and in past proceedings. We therefore reverse and grant a new trial.

Judgment of sentence vacated. Case remanded for new trial. Jurisdiction relinquished.

Judge Solano did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/2018