J-S19009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DURAND DAMION LAWSON | : | |
| | : | |
| Appellant | : | No. 193 WDA 2021 |

Appeal from the Judgment of Sentence Entered January 10, 2021
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s): CP-37-CR-0000070-2018

BEFORE:  DUBOW, J., MURRAY, J., and PELLEGRINI, J.*

MEMORANDUM BY DUBOW, J.:                    **FILED:  October 15, 2021**

Appellant, Durand Damion Lawson, appeals as of right from the Judgment of Sentence imposed after a jury found him guilty of Possession of Firearm Prohibited, Firearms Not to Be Carried Without a License, and Fleeing or Attempting to Elude Police Officer.[1]  After careful review, we affirm.

We glean the following recitation of the factual and procedural history from the certified record and the trial court's March 8, 2021 Opinion.  On January 9, 2018, Officer Brian Lombardo of the New Castle Police department was on patrol when he determined that a passing Chevrolet Caprice, driven by Appellant, had an expired registration.  When Officer Lombardo activated

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6105(a)(1) and 6106(a)(1), and 75 Pa.C.S.A. § 3733(a), respectively.

his lights and sirens to conduct a traffic stop, Appellant led him on a high-speed chase, reaching speeds in excess of 70 miles per hour in a residential zone with a 25 mile per hour speed limit. The car chase ended when Appellant crashed the car into the side of an apartment building. Appellant, dressed in a black jacket, yellow shirt, jeans, and Nike shoes, then fled from the vehicle. Dashcam video recorded the event from its inception to Appellant's flight.

Officer Lombardo watched Appellant run across a snowy field, observing Appellant slip and fall. Officer Randall Cook, who had responded to the radio alert of the chase, arrived and watched Appellant, whom he recognized from the radio description as the man wearing a yellow shirt, black jacket, and jeans, force his way into a nearby house. At the same time, Robert Sutton, a resident of the house, who had seen Appellant driving the Caprice about an hour and a half earlier, watched Appellant enter through the back door, yell "police!" and run upstairs.

Officers Lombardo and Cook followed Appellant into the house and commanded everyone inside to leave. Four members of the household who were downstairs complied, but Appellant was not among them. The officers reiterated the command and, after they announced that a search dog was on its way, Appellant descended the stairs, saying that he had been asleep. He was breathing heavily, and wearing only wet, muddy jeans. The officers searched the house, where they found wet Nike shoes, as well as the black jacket and yellow shirt that they saw Appellant wearing during the foot chase.

Appellant put the wet shoes on and wore them to the New Castle Police Station.

As this was happening, Officer Darcell Bouyer arrived at the accident scene within thirty seconds of the crash and saw a loaded High Point 9-millimeter pistol lying in plain view on the driver's side front seat of the Caprice. He photographed the pistol as he found it.

On January 9, 2018, the Commonwealth charged Appellant with the above offenses. The court appointed the Newcastle Public Defender's Office to represent Appellant.

On May 10, 2018, the Newcastle Public Defender's Office filed a Petition to Withdraw its representation based on a conflict engendered by its prior representation of Appellant in an unrelated matter. On the same day, the trial court granted the motion and appointed Almon Burke, Esq., as conflict counsel. The court scheduled trial for June 4, 2018.

Attorney Burke thereafter filed numerous unopposed continuance motions in this case because he was variously awaiting discovery, negotiating a plea agreement, or unavailable.[2] Trial ultimately commenced on October 16, 2019.

_____

[2] In the meantime, the court separately proceeded with trial, sentencing, and post-sentence motion in an unrelated matter in which Appellant was defendant. Attorney Burke represented Appellant in that case as well. An appeal in that matter is currently pending before this Court under Docket No. 192 WDA 2021.

During the pretrial phase, Appellant voiced his displeasure with Attorney Burke's representation. First, at a March 5, 2019 hearing, at Appellant's request, Attorney Burke orally moved to withdraw.[3] After speaking with Attorney Burke and Appellant, the court denied the motion. Trial Ct. Or., dated 3/6/19. Thereafter, at some point on or before September 30, 2019, the court received an undated *pro se* letter from Appellant asking for the removal of Attorney Burke due to irreconcilable differences. The letter was not styled as a motion, and did not ask for the appointment of new counsel or to proceed *pro se*. The court entered an order attaching the letter and directed counsel to "take any action that counsel deems appropriate." Trial Ct. Or., dated 9/30/19.

On the day of trial, before jury selection began, the trial court asked Appellant if he wanted to represent himself or proceed with Attorney Burke. Appellant explained that he would prefer to proceed *pro se* if the court would not appoint new counsel and asked if he could contact his family to discuss hiring private counsel. The trial court interpreted this as a request for a continuance, which the court denied, stating "this really is the time for this case . . . if you'd chosen that, you should have done that before today." N.T. Trial, 10/16/19, at 3.

The court then conducted a counsel waiver colloquy in accordance with Pa.R.Crim.P. 121. At the close of the colloquy, when the court asked if he

---

[3] Attorney Burke filed a written Motion to Withdraw the following day, on March 6, 2019.

wanted to accept Attorney Burke's representation or represent himself, Appellant responded "I want to represent myself." N.T. Trial, 10/16/19, at 6. The trial court concluded that Appellant waived his right to counsel knowingly, voluntarily, and intelligently, and appointed Attorney Burke to serve as standby counsel, explaining to Appellant that "[y]ou don't have to use him if you don't want to." *Id.* at 11.

After accepting Appellant's waiver of counsel, the court informed Appellant that he had the right to wear clothes other than his jail jumpsuit during the trial, and that the court had clothes it could provide to him. Appellant replied, "I'll wear this." *Id.* at 8. The court sought further clarification from Appellant by stating, "[y]ou understand that we would provide you with appropriate clothing, but you don't want that?" *Id.* Appellant replied "[n]o," indicating that he did not want the change of clothes. *Id.*

Jury selection then proceeded. After the court questioned several members of the panel, Appellant announced that he did not want to continue participating in jury selection and asked to return to his jail cell. The court denied Appellant's request, and jury selection continued. Soon thereafter, Appellant declared, "[t]his is bullshit. I'm getting angry," and left the room. *Id.* at 34. The court allowed him to leave but instructed the court deputy to hold him in an empty jury room until the close of proceedings. Jury selection proceeded with Appellant's stand-by counsel Burke.

When jury selection moved to the peremptory strike stage, the court instructed Attorney Burke to consult with Appellant, explain the striking process, and either relay Appellant's strikes to the court or get permission to exercise strikes on Appellant's behalf. When Attorney Burke spoke to Appellant, Appellant interrupted him with profanities, refused to discuss peremptory strikes with him, and did not ask to return to the courtroom. Following this exchange, the Commonwealth struck several potential jurors, the defense struck none, and the court seated the remaining jurors.

Opening arguments took place the next day, and Appellant fully participated as his own counsel. During its case in chief, the Commonwealth called Officers Lombardo, Bouyer, and Cook, along with Mr. Sutton, who testified to the above facts and identified Appellant in dashcam footage. The Commonwealth also called Daniel Brown, who testified that he owned a 1992 Chevrolet Caprice, he was the registered owner associated with the license plates found on the car in question, and that he did not own a firearm or leave a firearm in his Caprice. The Commonwealth also presented evidence through several witnesses that Appellant was not licensed to carry a firearm and that the firearm found in the Caprice actually worked. Appellant cross-examined several of the Commonwealth's witnesses.

During his case in chief, Appellant re-called Mr. Brown, who testified that his license plates had disappeared several months before the incident in question, and that pictures of the car taken at the crime scene were of a different Caprice than the one he owned. He also called Treyshawn Littles, his

former cellmate, who testified that he, not Appellant, was the actual driver of the car who fled police on foot while wearing the shirt, jacket, and shoes that police found in the house.

The jury found Appellant guilty of the above charges. On October 21, 2019, the court ordered a Pre-Sentence Investigation and scheduled Appellant's sentencing hearing for January 10, 2021.

At the outset of the January 10, 2020 sentencing hearing, Appellant orally moved for the reinstatement of Mr. Burke as his counsel, and the court granted the motion. At the sentencing hearing, the court sentenced Appellant to an aggregate term of six to twelve years' incarceration. Appellant did not file a post-sentence motion or a direct appeal.

On September 17, 2020, Appellant filed *pro se* a Petition for Post-Conviction Relief ("PCRA Petition") alleging ineffective assistance of counsel based on Attorney Burke's failure to file a post-sentence motion or a direct appeal. The trial court appointed Christopher P. Lacich, Esq. as PCRA Counsel on September 28, 2020. Attorney Lacich filed an amended PCRA Petition on October 26, 2020. On January 29, 2021, following a PCRA hearing, the court reinstated Appellant's appellate rights *nunc pro tunc*.

Appellant, still represented by Attorney Lacich, filed a timely Notice of Appeal on February 3, 2021. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following questions in his counseled brief, reordered for ease of disposition:

1. Whether [] Appellant's election to proceed *pro se* was knowingly, intelligently, and voluntarily made?

2. Whether the [t]rial [c]ourt erred or abused its discretion when *only* the Commonwealth selected [] Appellant's jury at the point of [peremptory] challenges?

3. Whether the [t]rial [c]ourt erred or abused its discretion in denying that Appellant's verdict was based on evidence insufficient to sustain his convictions beyond a reasonable doubt?

4. Whether the [t]rial [c]ourt erred and abused its discretion by finding that Appellant's verdicts were not against the weight of the evidence?

5. Whether the [t]rial [c]ourt erred or abused its discretion by not, *sua sponte*, declaring a mistrial in light of manifest necessity?

Appellant's Br. at 10-11.

**Appellant's Decision to Proceed *Pro Se***

In his first issue, Appellant asserts that the trial court erred when it allowed him to proceed *pro se*, contending that his waiver was not voluntary because he had "expressed a desire to hire private counsel and/or requested a continuance prior to trial . . . to explore such possibility with this family[.]" Appellant's Br. at 38. Appellant contends that the court erred "by not granting him a continuance and in essence forcing him under duress to conduct his own jury trial in jail clothes and shackles." *Id*. at 40-41. Appellant also that asserts that his waiver was not knowing because he "may not have been in his right

mind," emphasizing as an example his "confusion" as to the role of standby counsel during jury selection. *Id*. at 39-41.

Preliminarily, we conclude Appellant waived any challenge to the denial of a continuance by failing to develop his claim with citation to case law and a factual or legal analysis supporting assertion of error. *See* Pa.R.A.P. 2119 (a), (b) (requiring argument and citation to supporting authority for point at issue); *Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) ("it is an appellant's duty to present arguments that are sufficiently developed for our review" or risk waiver). Because Appellant only summarily asserts that the court erred in denying his request for a continuance, we conclude he has waived any challenge pertaining to the court's denial of Appellant's eleventh-hour continuance request.

With respect to Appellant's challenge to his waiver of counsel, we note that both "the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution. Deprivation of these rights can never be harmless." *Commonwealth v. Payson*, 723 A.2d 695, 699-700 (Pa. Super. 1999) (citations omitted). When a defendant is not represented by counsel, we must determine whether the defendant validly waived that constitutional right. *Commonwealth v. Murphy*, 214 A.3d 675, 678–79 (Pa. Super. 2019). Where a waiver is knowing, voluntarily, and intelligent, the court may not override a defendant's "assertion of a vital constitutional right merely because the trial court thinks it knows what is best

for the defendant." ***Commonwealth v. Starr***, 664 A.2d 1326, 1336-37 (Pa. 1995).

To ensure that a waiver is knowing, voluntary, and intelligent, the trial court must conduct a "probing colloquy" to ensure that the defendant is aware of both the right to counsel and the significance and consequences of waiving that right. ***Id.*** at 1335. ***See also*** Pa.R.Crim.P. 121(A)(2) (detailing requirements for ensuring a defendant is aware of his right to counsel and the consequences of waiving that right). In addition, the waiver colloquy must "contain a clear demonstration of the defendant's ability to understand the questions posed to him during the colloquy." ***Commonwealth v. McDonough***, 812 A.2d 504, 507 n.1 (Pa. 2002). Once we have established that the trial court met the minimum colloquy requirements of Rule 121, we determine whether the defendants' waiver was otherwise knowing, voluntary, and intelligent based on the totality of the circumstances. ***Commonwealth v. Phillips***, 93 A.3d 847, 853-54 (Pa. Super. 2014).

Our review of the record establishes that the trial court conducted a thorough colloquy, explaining each of the enumerated elements of Rule 121(A)(2). In addition, our review confirms that the court established through an extended colloquy that Appellant understood the consequences of waiving his right to counsel. Specifically, Appellant affirmed that he understood his right to counsel. N.T. Trial, 10/16/19, at 3-4. When the court initially asked Appellant if he understood the charges against him, Appellant said that he did not, and so the court explained the nature of the charges, including the

elements of each charge and the range of possible sentences. *See id.* at 4. After the extended colloquy, Appellant unequivocally stated, "I want to represent myself." *Id.* at 7. Under the totality of these circumstances, we reject Appellant's claims that the trial court "forced [him] under duress" to proceed *pro se* or that he was confused. This issue, thus, garners no relief.

**Jury Selection**

Appellant next argues that the trial court erred when it allowed jury selection to proceed outside his presence. While Appellant concedes that he was not present in the courtroom because he "elected not to participate" in jury selection, he contends, without any citation to supporting authority, that the court erred in not insisting he return to the court room to exercise his preemptory challenges. Appellant's Br. at 43. Ignoring the facts that Appellant asked to be removed from the courtroom and Mr. Burke consulted with him regarding the jurors and the exercise of preemptory charges outside of the courtroom, Appellant contends that he "was precluded from selecting his jury." *Id*. at 44.

It is well settled that a criminal defendant has both the federal and state constitutional right to be present during all critical phases of the proceedings, which include the empaneling of the jury. *Commonwealth v. Ressler*, 798 A.2d 221, 223 (Pa. Super. 2002); Pa.R.Crim.P. 602(A). Thus, Appellant's argument raises a question of law, for which our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Tejada*, 188 A.3d 1288, 1292-93 (Pa. Super. 2018).

"[A] defendant may forfeit his right to be present for his trial and his right of self-representation through his behavior[.]" *Id.* at 1298. However, when a court orders a *pro* se defendant removed from the courtroom, it must safeguard the defendant's right to counsel. *Id.* It can do so by "(1) obtaining a waiver of the right to representation, or (2) protecting the right to representation through other means, such as by the substitution of standby counsel." *Id.*

In its 1925(a) Opinion, the trial court observed that Appellant had waived his right to be present in the courtroom when he disrupted the proceedings, and noted that the court had preserved his right to counsel by "having standby counsel present for the remainder of the jury selection process and then allowing counsel to speak with [Appellant] to exercise his right to use peremptory strikes." Tr. Ct. Op. at 11. Thus, the court concluded, Appellant was not deprived of his constitutional right to be present.

We agree with the trial court's analysis and thoughtful strategy to deal with Appellant's refusal to participate in jury selection. After Appellant exited the courtroom, the trial court safeguarded Appellant's right to representation by instructing Attorney Burke, whom the court had already appointed as standby counsel, to meet with Appellant and relay both the court's instructions to Appellant, and Appellant's decisions regarding peremptory strikes to the court. N.T. Trial, 10/16/19, at 43-44. Appellant's refusal to participate in jury selection after the trial court attempted to engage him in the process

establishes that Appellant forfeited his right to be present during the selection. This issue warrants no relief.

**Sufficiency of the Evidence**

Appellant argues that the evidence was insufficient to establish that he was the person who fled police, or to establish that he possessed a firearm. Appellant's Br. at 33. We disagree.

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). Our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. ***Commonwealth v. Lynch***, 242 A.3d 339, 352 (Pa. Super. 2020). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017). "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for [that of] the fact-finder." ***Id.*** Likewise, we may not "give weight to or speculate upon matters not in evidence[.]" ***Commonwealth v. Griscavage***, 517 A.2d 1256, 1259 (Pa. 1986).

**Fleeing a Police Officer**

Appellant challenges the sufficiency of the evidence establishing that he was the person who fled police. "[E]vidence of identification need not be

positive and certain to sustain a conviction." ***Commonwealth v. Jones***, 954 A.2d 1194, 1197 (Pa. Super. 2008). "Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator." ***Commonwealth v. Orr***, 38 A.3d 868, 874 (Pa. Super. 2011).

At trial, the Commonwealth presented the testimony of several eyewitnesses who directly identified Appellant as the driver of the Caprice who fled on foot. ***See*** N.T., Trial, 10/17/19, at 24 (Officer Cook), 78 (Officer Lombardo). It also presented other circumstantial evidence corroborating their testimony. For instance, arresting officers found discarded clothes in the house that matched the driver's clothing, including a pair of Nike shoes, which were wet and muddy, consistent with being worn while running in a muddy field; Appellant subsequently wore those shoes to the police department. ***See id***. at 33-34 (Officer Cook), and 83-91 (Officer Lombardo).  The arresting officers also described Appellant as breathing heavily, in a manner consistent with having just fled on foot; and wearing wet, muddy jeans, again suggesting that it was he who fell in the field as officers watched him flee.  ***See id.*** at 33, 83**.** In addition, Robert Sutton's testimony that he saw Appellant driving the Caprice an hour and a half before the incident further substantiates the Commonwealth's claim that Appellant was the driver who led police on the chase. ***See id.*** at 52.

We conclude that this evidence, found credible by the jury, was sufficient to identify Appellant as the driver of the Caprice who fled from police on foot.

**Firearms Offenses-Possession**

Appellant also challenges the sufficiency of the evidence used to convict him under the two firearms statutes, contending that no evidence showed that he "actually possessed a firearm on the day of the incident." Appellant's Br. at 28. This argument merits no relief.

The Commonwealth can meet the possession element of firearms statutes through evidence proving constructive possession. ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013). Constructive possession "is an inference arising from a set of facts that possession of the contraband was more likely than not" and "may be established by the totality of the circumstances." ***Id.*** at 820 (citation omitted). The Commonwealth may establish constructive possession with circumstantial evidence that allows the trier of fact to reasonably infer that the defendant exercised dominion and control over the contraband at issue. ***Commonwealth v. Parrish***, 191 A.3d 31, 37 (Pa. Super. 2018).

Applying this standard, we have held that evidence establishing that a defendant was "the sole occupant of the vehicle" in which a weapon was visible and accessible to the driver is relevant to constructive possession. ***Commonwealth v. Parker***, 847 A.2d 745, 751 (Pa. Super. 2004). In addition, a defendant's behavior showing consciousness of guilt during a traffic stop can also establish constructive possession. ***See Commonwealth v. Cruz***, 21 A.3d 1247, 1253 (Pa. Super. 2011).

In its Rule 1925(a) Opinion, the trial court concluded that the Commonwealth satisfied its burden by establishing that Appellant had constructive possession of the firearm. *See* Trial Ct. Op. at 20. The Commonwealth presented evidence demonstrating that Appellant was the driver and sole occupant of the Caprice; that the gun was located on the front seat, a place readily accessible to the driver; and that Appellant exhibited consciousness of guilt by responding to a routine traffic stop by immediately leading police on a high-speed chase. *See* N.T. Trial, 10/17/2021, at 62-75 (location of firearm), 73-75 (initiation of chase). We agree with the trial court that, viewed under the totality of the circumstances and with all inferences favorable to the Commonwealth, these facts are sufficient to establish Appellant's constructive possession of the firearm.

**Weight of the Evidence**

Appellant also challenges the weight of the evidence used to convict him. While he concedes that "[t]his issue was not raised after trial or sentencing," he asserts that it "was raised in Appellant's Concise Statement of Errors and the trial court did not find waiver." Appellant's Br. at 36. Appellant's challenge is waived.

Issues that appellants do not raise in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). It is well-settled that a defendant must preserve a weight claim "either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." *Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa. Super.

2014) (citation omitted); *see also* Pa.R.Crim.P. 607(A). Failure to properly preserve a weight claim will result in waiver of the claim, even if the trial court addresses the issue in its Rule 1925(a) Opinion. **See Thompson**, 93 A.3d at 490-91 (explaining that a trial court's addressing an unpreserved weight claim in its 1925(a) Opinion does not preserve the claim on appeal).

Because Appellant raised his weight claim for the first time in his Rule 1925(b) Statement, Appellant has waived this issue.

**Mistrial**

Finally, Appellant argues that "the trial court erred or abused its discretion when it failed to *sua sponte* declare a mistrial" because Appellant's "bouts of anger, misbehavior, absence from the courtroom, and general disobedience in the form of wearing his jail cloths [*sic*]" so prejudiced the jury against him that there was manifest necessity for a mistral. Appellant's Br. at 47-48.

"It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision." **Commonwealth v. Kelly**, 797 A.2d 925, 936 (Pa. Super. 2002).

When a defendant believes an event at trial resulted in prejudice, the defendant must move for a mistrial immediately. Pa.R.Crim.P. 605(B). The failure to do so results in waiver. **See, e.g., Commonwealth v. Ables**, 590 A.2d 334, 340 (Pa. Super. 1991) (concluding that "[s]ince appellant failed to move for a mistrial, he cannot now complain that the court erred in failing to

grant a mistrial when no such motion was made."). Here, Appellant did not move for a mistrial.

Absent a motion by a defendant, a "trial judge **may** declare a mistrial [*sua sponte*] **only** for reasons of manifest necessity." Rule 605(B) (emphasis added). Thus, a trial court exercises the power to declare a mistrial *sua sponte* "with the greatest caution, under urgent circumstances, and for very plain and obvious causes[.]" **Commonwealth v. Owens**, 445 A.2d 117, 120 (Pa. Super. 1982) (citations omitted).

While the trial court did not directly address its decision not to declare a mistrial *sua sponte* in its 1925(a) Opinion, we conclude that it did not err when it did not do so. Outside of his lone outburst during jury selection, Appellant cites no examples from the record of any further disruptions and our review reveals none. In fact, the record establishes that Appellant appropriately participated in the proceedings after jury selection and that the trial court consistently maintained control of the proceedings in an orderly fashion. Accordingly, we find that the trial court did not err in declining to declare a mistrial *sua sponte*.

**Conclusion**

Having found Appellant's issues either waived or meritless, we affirm the Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/15/2021</u>