J-S34001-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LINCOLN LEVYS, | : | |
| | : | |
| Appellant | : | No. 558 WDA 2017 |

Appeal from the Judgment of Sentence December 14, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0003962-2015

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS, J.*

MEMORANDUM BY DUBOW, J.:                    FILED OCTOBER 28, 2019

Appellant, Lincoln Levys, appeals from the December 14, 2016 Judgment of Sentence entered in the Allegheny County Court of Common Pleas following his jury conviction of Third-Degree Murder, Endangering the Welfare of a Child, Aggravated Assault, and Aggravated Assault—Victim Less than 13.[1]  After careful review, we affirm.

The Commonwealth charged Appellant with the above crimes[2] following the October 23, 2014 death of his five-week-old daughter, S.L., for whom he was the primary caregiver.

_____

[1] 18 Pa.C.S §§ 2502(c), 4304(a)(1), 2702(a)(1), and 2702(a)(9), respectively.

[2] The Commonwealth had also charged Appellant with First-Degree Murder, 18 Pa.C.S § 2502(a), but the jury convicted him of the lesser offense of Third-Degree Murder.

_____

*   Retired Senior Judge assigned to the Superior Court.

On April 27, 2015, Attorney Christopher Patarini of the Allegheny County Public Defender's Office entered his appearance on behalf of Appellant. Attorney Patarini represented Appellant in the pre-trial phase of the case.

On February 26, 2016, the Commonwealth filed a Notice of Prior Bad Acts pursuant to Pa.R.E. 404(b).[3]

Prior to the commencement of trial, on September 1, 2016, Attorney Patarini filed a Motion to Withdraw as Counsel[4] in which he represented to the court that Appellant had indicated that Appellant "did not wish [counsel] to participate in his defense in any manner." Motion, 9/1/16, at ¶ 5. On September 9, 2016, Appellant pro se filed a Pretrial Motion to Dismiss Ineffective Counsel.[5]

_____

[3] The Commonwealth's Notice indicated that it would present evidence at Appellant's trial that: (1) at the time of his arrest, Appellant's trial on separate charges of Cultivating Marijuana was pending; and (2) moments after his final contact with S.L., Appellant forced Sheena Alston—Appellant's ex-girlfriend and the victim's mother—to have sexual intercourse with him.

[4] In the Motion to Withdraw, Attorney Patarini stated by way of background that, on or about July 27, 2016, Appellant informed the trial court that he wished to represent himself, that Appellant had executed a waiver to that effect, and that the court had appointed Attorney Patarini—and co-counsel Heath Leff—as standby counsel. Motion, 9/1/16, at ¶¶ 3-5.

[5] Appellant had also pro se filed, on August 8, 2016 and August 26, 2016, two Motions to Vacate Charges for Lack of Subject Matter Jurisdiction because he is a "sovereign citizen," and therefore not subject to the laws of the Commonwealth or country. The trial court properly rejected those Motions. N.T. 9/22/16, at 3. See also Commonwealth v. McGarry, 172 A.3d 60, 66 (Pa. Super. 2017) (rejecting the defendant's claim of sovereign citizenship as legally invalid).

Appellant's jury trial commenced on September 22, 2016. From the outset, Appellant insisted that he did not want appointed counsel to represent him,[6] that he did not recognize the jurisdiction of the court over him, and, as manifested by his disruptive conduct, that he would not cooperate with the court's instructions. Notably, notwithstanding the court's repeated warnings and numerous opportunities to participate, Appellant continued to attempt to disrupt all aspects of his trial, resulting in his removal from the courtroom for much of the proceedings.

Relevant to the instant appeal, the Commonwealth presented the testimony of Dr. Jennifer Wolford, the attending physician in the Division of Child Advocacy at Children's Hospital; Dr. Abdulrezak Shakir, the Allegheny County deputy medical examiner, Dr. Eric Vay, an expert in forensic pathology; and Sheena Alston, the victim's mother. The court also admitted into evidence photographs of the deceased victim.

Appellant did not present any witnesses or testify on his own behalf. He did, however, admit exhibits in support of his defense that Ms. Alston killed S.L.

_____

[6] The court had previously permitted Attorneys Patarini and Leff to participate as stand-by counsel. However, as discussed in detail, infra, when Appellant refused to participate in his trial, the court charged them with representing him as it proceeded to try him in absentia.

On October 3, 2016, the jury convicted Appellant of the above charges. The court deferred sentencing pending preparation of a Post-Sentence Investigation Report.

On December 14, 2016, the trial court sentenced Appellant to a term of 20 to 40 years' incarceration for his conviction of Third-Degree Murder. The court imposed no further penalty for his remaining convictions.[7]

On December 22, 2016, Appellant filed a Post-Sentence Motion in which he challenged the weight and sufficiency of the Commonwealth's evidence and requested a new trial. Attorney Patarini again requested the court's permission to withdraw as counsel. The trial court denied Appellant's Post-Sentence Motion on January 5, 2017. Appellant did not file a timely direct appeal.

On March 17, 2017, however, the trial court reinstated Appellant's direct appeal rights nunc pro tunc, and granted Attorney Patarini's request to withdraw as counsel. The trial court appointed new counsel—Attorney Alan R. Patterson, III—who filed a timely Notice of Appeal.[8]

Appellant raises the following 12 issues on appeal:

_____

[7] At separate docket numbers, the court also sentenced Appellant to two to four years' incarceration for Endangering the Welfare of his son, L.L., and to 5 to 10 years' incarceration for the Aggravated Assault of Ms. Alston's other daughter, S.A. Appellant has not appealed from those Judgments of Sentence.

[8] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

I.   Did the [t]rial [c]ourt err or abuse its discretion in failing to grant the repeated motions and requests made by both Appellant and defense counsel to allow defense counsel to withdraw in the matter knowing Appellant's position, that he did not agree to being represented by defense counsel, said position being made known at every opportunity through ongoing motions to withdraw by defense counsel or by Appellant's repeated statements that he did not agree to being represented?

II.   Did the [t]rial [c]ourt err or abuse its discretion in allowing the trial to commence and proceed with [] Appellant in absentia over repeated objections by [] Appellant and defense counsel when it was virtually impossible to have a fair and impartial jury without [] Appellant's cooperation?

III.   Did the [t]rial [c]ourt err or abuse its discretion in failing to grant a mistrial as a result of defense counsel's inability to properly defend the matter considering defense counsel's task of being required to represent Appellant in absentia, where [] Appellant refused to agree to representation and refused to cooperate in any facet of the trial?

IV.   Did the [t]rial [c]ourt err or abuse its discretion in allowing, over defense counsel objections, the Commonwealth to present 102 photo exhibits including numerous photos of the deceased victim knowing that the photos of a deceased five-week-old child would be inflammatory and prejudicial beyond any probative value?

V.   Did the [t]rial [c]ourt err or abuse its discretion in allowing the Commonwealth to present testimony by Sheena Alston that [] Appellant threatened Ms. Alston's life and/or the children's lives, said testimony being inflammatory and prejudicial beyond any probative value and said testimony being sprung on defense counsel during trial when the Commonwealth had failed to raise this testimony in prior [Rule] 404(b) pre-trial motions?

VI.   Did the [t]rial [c]ourt err or abuse its discretion in allowing the testimony of Dr. Wolford to provide opinion testimony regarding marks on the victim's face knowing that this testimony was not based on reasonable medical certainty but based on pure conjecture?

VII. Did the [t]rial [c]ourt err or abuse its discretion when overruling defense objection regarding the testimony of Sheena Alston being abused as a child when the testimony was not relevant and was used to engender sympathy for the witness and not for legitimate reasons or value whereby the prejudicial effect outweighed any probative value?

VIII. Did the [t]rial [c]ourt err or abuse its discretion in overruling [Appellant's] objection [to Sheena Alston] mention[ing] Appellant's sovereign citizenship when there was no relevance to the crimes charged in the instant matter and where the prejudicial effect outweighed probative value?

IX. Did the [t]rial [c]ourt err or abuse its discretion in overruling [Appellant's] objection [to Sheena Alston] mention[ing] Appellant's arrest involving marijuana charges on the night before the victim was born, when there was no other relevance to the crimes charged in the instant matter and where the prejudicial effect outweighed any probative value?

X. Did the [t]rial [c]ourt err or abuse its discretion in failing to grant a mistrial after the 911 tape was played for the jury, said tape being overly inflammatory and where its overwhelming prejudicial effect outweighed any probative value?

XI. Did the [t]rial [c]ourt err in holding that the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt the charge of Criminal Homicide to sustain the conviction of murder in the third degree and specifically that [] Appellant either killed, had the specific intent to kill, or caused the death of [S.L.]?

XII. Did the [t]rial [c]ourt err in holding that the Commonwealth presented sufficient evidence to prove beyond a doubt the charge of Criminal Homicide to sustain the conviction of murder in the third degree and specifically that there was any malice proven or actions by [] Appellant showing a wanton and willful disregard of unjustified or extremely high risk that their conduct resulted in the death of [S.L.] considering the expert['s] testimony that no single action caused the death of [S.L.]?

Appellant's Brief at 6-8.

Constitutional Issues

Appellant's first, second, and third issues are interrelated. We, thus address them together. In his first issue, Appellant claims that the trial court erred in refusing to permit trial counsel to withdraw and in refusing to permit Appellant to represent himself. Id. at 13-17. In his second and third issues, Appellant claims that the trial court erred in proceeding to try Appellant in absentia, and he, thus, received an unfair trial for which the court should have granted his Motion for Mistrial. Id. at 18-21. He asserts he is entitled to a new trial based on these "errors." Id. at 21.

These issues implicate Appellant's constitutional right to represent himself and to be present at trial, which are pure questions of law. Commonwealth v. Tejada, 188 A.3d 1288, 1292-93 (Pa. Super. 2018). When reviewing a question of law, our standard of review is de novo, and our scope of review is plenary. Commonwealth v. Crawley, 924 A.2d 612, 614 (Pa. 2007).

The right to appear pro se is guaranteed as long as the defendant understands the nature of his choice. Faretta v. California, 422 U.S 806, 835 (1975). Where a defendant knowingly, voluntarily, and intelligently seeks to waive his right to counsel, the trial court must allow the individual to proceed pro se. Commonwealth v. El, 977 A.2d 1158, 1162-63 (Pa. 2009). A defendant has the burden of establishing by a preponderance of the evidence that he has waived his constitutional rights voluntarily, knowingly, and intelligently. Commonwealth v. Scarborough, 421 A.2d 147, 153 (Pa.

1980). We review the decision whether to grant or deny pro se status for an abuse of discretion. *EI*, 977 A.2d at 1165.

It is well-settled, however, that "[w]henever a defendant seeks to represent himself, and particularly when he may be disruptive, standby counsel should be appointed." *Commonwealth v. Africa*, 353 A.2d 855, 864-65 (Pa. 1976).

Relatedly, "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338, (1970) (citation omitted). However,

> a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent of courts and judicial proceedings.

*Commonwealth v. Tejada*, 188 A.3d 1288, 1293-94 (citing *Allen*, 397 U.S. at 343).

The consequence of behavior by a pro se defendant warranting his removal from the courtroom is termination of his right to self-representation, not his forfeiture of the right to any representation. *Tejada*, 188 A.3d at 1297.

In Tejada, the trial court found that the defendant had knowingly and intelligently waived his right to counsel, but then, a short time later, he requested the appointment of standby counsel. Id. at 1290-91. The trial court denied Appellant's request as untimely given his prior waiver of the right to counsel. Id. at 1291. Then, as a result of the pro se defendant's repeated outbursts in the courtroom, the court removed the defendant from the courtroom and proceeded to try him in absentia, without any counsel representing his interests. Id. On appeal, the defendant challenged the court's refusal to appoint counsel to represent him following his admittedly appropriate removal from the courtroom. Id. at 1294. This Court concluded that "a defendant may forfeit his right to be present for his trial and his right of self-representation through his behavior[.]" Id. at 1298. But, the Court continued, in that event, proceedings cannot continue "(1) without a waiver of the right to representation, or (2) protecting the right to representation through other means, such as by the substitution of standby counsel." Id.

Instantly, Appellant avers that he did not, by his disruptive courtroom behavior, knowingly and intelligently waive his right to self-representation. Appellant's Brief at 17. He argues that the trial court misapplied the holding in Tejada when it appointed Appellant counsel despite his objections. Id. at 16. Appellant argues that the court's "thrusting unwanted assistance upon" him entitles him to a new trial. Id.

Appellant also claims that the trial court did not adequately advise him of the nature of his right to be present at his trial and the risk of forfeiting that

right. Id. at 18 (citing Commonwealth v. Vega, 719 A.2d 227, 230 (Pa. 1998) (discussing the colloquy adequate to establish a knowing and intelligent waiver when a defendant expressly waives his right to be present at trial)). In support of his claim, he attempts to differentiate the instant case from cases in which the court tried the defendants in absentia after they either absconded during plea negotiations or failed to appear for trial, contending he was "forced to be removed . . . above his protests and attempts to present his own defense" and that he "did not waive his right to be present." See Appellant's Brief at 18-20 (citing Commonwealth v. Wilson, 712 A.2d 735 (Pa. 1998); and Commonwealth v. Sullens, 619 A.2d 1349, 1353 (Pa. 1992)). He concludes that he is, thus, entitled to a new trial. Id. at 20.

Appellant has grossly mischaracterized the circumstances pertaining to these issues. The trial court explained its decision not to permit counsel to withdraw, not to allow Appellant to proceed pro se, and to hold Appellant's trial in absentia as follows:

> [Appellant's] "sovereign citizen" behavior began before trial. So, the [c]ourt was not surprised when he continued with that untenable theory before the jury was even selected. His insistence on pushing those thoughts reached the point where he was removed from the [c]ourtroom and jury selection began. After a break, with potential jurors in the jury box to conduct voir dire, [Appellant] continued with his "lack of consent" position and ramblings about a "CQ trustee." After several warnings, [Appellant] was removed from the courtroom and those ten potential jurors were excused from the jury pool. Several minutes later, the topic of supplemental voir dire questions was discussed. [Appellant] was present. His presence did not last long. He, once again, was taking issue with his "lack of consent" to the proceeding and then [was] removed. Near the end of jury

selection for that day, [Appellant] was removed but not before he objected to the jury panel. The weekend passed and on Tuesday, jury selection was completed. The [c]ourt was preparing for opening arguments and opening instructions. [Appellant] was present. But, his insistence on things which are part of his sovereign citizen thinking prevented him from participating in the next event in his trial. That being opening instructions followed by opening arguments. The [c]ourt removed [Appellant] from the room. Some[]time passed, and [Appellant] was brought back to the courtroom. The [c]ourt engaged in some dialogue with him. It was more of the same obstinance which he had displayed already which prompted the [c]ourt to have him removed. [Appellant repeated this behavior again later when the court returned Appellant to the courtroom at the beginning of Appellant's case-in-chief. Again his disruptive conduct resulted in his removal from the courtroom]. It is fair to say that at each significant event in the trial, [A]ppellant was brought to the courtroom with a goal of seeking his participation in his own trial.

Trial Ct. Op., 7/25/18, at 3-4 (citations to the Notes of Testimony omitted).

Our review of the Notes of Testimony from Appellant's trial confirms the accuracy of the trial court's recitation of the circumstances leading to Appellant's "involuntary" removal from the courtroom. The record supports the trial court's position that it made repeated efforts to encourage and permit Appellant to participate in his trial, but that Appellant repeatedly "subvert[ed] the process." Id. at 4. Importantly, and unlike in Tejada, Appellant had counsel at every stage of the proceeding to advocate for him "whether he was in the courtroom trying to derail things or after he was taken away." Trial Ct. Op. at 5.

The trial court aptly observed that, although it was clear that Appellant did not want counsel to represent him, because his own behavior caused his removal from the courtroom, the court was required to exercise vigilance to

protect Appellant's right to representation. Mindful of the mandate in Tejada that "the consequence of behavior warranting removal under [Illinois v.] Allen is termination of the right to self-representation, not forfeiture of any right to representation,"[9] the court further explained as follows:

> That is precisely what happened with [Appellant]. He wanted to represent himself. However, his own obstinate and disruptive conduct forced him to be removed from the trial. But, the trial was not going to stop. That is why the [c]ourt had standby counsel poised and ready to go. [Appellant] was entitled to a fair trial. A fair trial is one where advocacy takes place on [a defendant's] behalf. That occurred. [Appellant's] lawyers—one of [whom] has probably defended more homicide cases than any member of the Allegheny County bar—did just that. They had a theory. They cross[-]examined consistent with that theory. And, to some extent, their efforts resonated with the fact[-]finder because [Appellant] was saved a life sentence by being found not guilty of first[-]degree murder.
> In sum, it was [Appellant's] own conduct which prompted this [c]ourt to remove him from his own trial. His removal then caused the [c]ourt to place a greater emphasis upon the right to representation than on the right to self-representation.

Trial Ct. Op. at 5.

Following our review of the record, we agree with the trial court and conclude that the trial court did not err in its application of the relevant law and did not abuse its discretion in refusing to permit Appellant to proceed pro se or in conducting his trial outside his presence. For these reasons, Appellant is not entitled to relief on his first two issues.

In his third issue, Appellant claims that the trial court erred in not granting a mistrial after proceeding to trial with Appellant in absentia.

_____

[9] Tejada, 188 A.3d at 1297 (emphasis in original).

Appellant's Brief at 20. He argues that, because the court proceeded with him in absentia, it necessarily denied him a fair trial. Id. at 21.

In support of this claim, Appellant has cited only to a case standing for the general proposition that a mistrial is required where an event occurs whose "unavoidable effect is to deprive the defendant of a fair trial." Id. (citing Commonwealth v. Chamberlain, 30 A.3d 381, 420 (Pa. 2011)). He has not, however, set forth citation to any case law supporting his more specific claim that a defendant who, by his own behavior, waives his right to be present at trial and his case proceeds in absentia, is deprived of a fair trial and is entitled to a new one.

"It is not the role of this Court to develop an appellant's argument where the brief provides mere cursory legal discussion." Lechowicz v. Moser, 164 A.3d 1271, 1276 (Pa. Super. 2017) (citing Commonwealth v. Johnson, 985 A.2d 915, 925 (Pa. 2009)). See also Commonwealth v. Kane, 10 A.3d 327, 331 (Pa. Super. 2010) (stating that appellate briefs must develop arguments sufficient for review). Accordingly, we find Appellant's third issue waived. See Pa.R.A.P. 2119(a); Commonwealth v. Perez, 93 A.3d 829, 838 (Pa. 2014) (concluding that claims failing to advance developed argument or citation to supporting authorities and record are waived).[10]

_____

[10] Moreover, it is well-settled that in order to preserve a claim for appellate review, a party must make a timely and specific objection, or the claim is waived. Commonwealth v. Schoff, 911 A.2d 147, 158 (Pa. Super. 2006); Pa.R.A.P. 302(a). In his Brief, Appellant failed to direct our attention to the place in the record where he preserved this issue by moving for a mistrial. Thus, we could also find waiver on this basis.

Evidentiary Issues

In his fourth issue, Appellant claims that the trial court erred in admitting "an overwhelming and outrageous number of photographic exhibits, 102 photographs, including multiple photographs of the deceased five-month[-old.]" Appellant's Brief at 22. Appellant concedes that the photos of S.L. were relevant, but argues that their prejudice outweighed their probative value. Id. at 23. He asserts that the court's limiting instruction to the jury was inadequate and that the "number of photographs admitted were cumulative." Id. at 23-24.

Our standard of review concerning a challenge to the admissibility of evidence is as follows:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

Commonwealth v. Johnson, 42 A.3d 1017, 1027 (Pa. 2012) (citations and quotation marks omitted).

When considering the admissibility of photographs of murder victims over the objection of a defendant, the trial court must engage in a two-part analysis:

> First, the court must determine whether the photograph is inflammatory. This Court has interpreted inflammatory to mean the photo is so gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant.

- 14 -

> Next, if the trial court decides the photo is inflammatory, in order to permit the jury to view the photo as evidence, it must then determine whether it has essential evidentiary value.

Commonwealth v. Funk, 29 A.3d 28, 33 (Pa. Super. 2011) (internal citations omitted).

Preliminarily, we note that, in his Brief, Appellant has misleadingly implied that the court admitted into evidence 102 photographs of S.L. This Court's review of the trial Notes of Testimony indicates that, at trial the Commonwealth moved to admit, and the court admitted, a total of 10 autopsy photographs of S.L. during the testimony of Dr. Shakir, the deputy medical examiner, and six additional photos of S.L. taken by Dr. Wolford, a physician at Children's Hospital, prior to S.L.'s autopsy.[11]

Our review indicates that the certified record does not contain the photographs to which Appellant objects. Our Supreme Court has determined that when an appellant challenges the admissibility of photographs and the record does not contain the photographs, we cannot assess the appellant's description and his claim. Commonwealth v. Powell, 956 A.2d 406, 423 (Pa. 2008). In finding waiver, the Supreme Court explained:

> An appellate court is "limited to considering only those facts that have been duly certified on appeal." Commonwealth v. Williams, 552 Pa. 451, 715 A.2d 1101, 1103 (1998). The Rules of Appellate Procedure place the burden on the appellant to ensure that the record contains what is necessary to effectuate appellate review, and they provide procedures to address gaps or oversights

---

[11] In its Brief, the Commonwealth explained that 44 of the total admitted photographs were of Appellant's residence. Commonwealth's Brief at 32 n.8.

in the compilation and transmission of the record. See generally, Pa.R.A.P. Ch. 19.

Id.

Given the foregoing, Appellant has waived his claim regarding the trial court's admission of photographs.[12]

In his fifth issue, Appellant claims that the trial court abused its discretion in allowing the Commonwealth to present Sheena Alston's testimony that Appellant had threatened her life and the lives of the children. Appellant's Brief at 24. Appellant argues that this testimony was highly prejudicial, irrelevant, and constituted impermissible character evidence. Id. at 26. Appellant also faults the trial court for failing to provide the jury with a limiting instruction.[13] Id.

Pennsylvania Rule of Evidence 404(b) prohibits the admission of evidence of a defendant's prior bad acts "to prove a person's character" or demonstrate "that on a particular occasion the person acted in accordance with the character[.]" Pa.R.E. 404(b)(1). The Rule further, however, provides that prior bad acts evidence "may be admissible for another purpose, such as

_____

[12] In its Rule 1925(a) Opinion, the trial court addressed Appellant's claim and concluded that "the probative value of this evidence was very high, and given the [c]ourt's elimination of [duplicative] photographs in a prior proceeding and its cautionary words to the jury, the admission of these photographs was not unfairly prejudicial to [Appellant.]" Trial Ct. Op. at 9.

[13] Appellant also included in his Question Presented to this Court an allegation that the Commonwealth did not include this evidence in its Rule 404(b) Pre-Trial Motion and, thus, surprised Appellant with it at trial. Appellant's Brief at 7, 24. Appellant has not developed this claim in his Brief beyond including citation to boilerplate authority. Id. at 24. We, thus, find this claim waived.

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

Our review of Appellant's objection to the admission of this testimony lodged by Appellant at trial indicates that Appellant objected only because the Commonwealth did not inform him of its intent to introduce this testimony in its Rule 404(b) Notice. See N.T., 9/29/16, at 444-48. Appellant did not object based on allegations that the testimony was prejudicial or irrelevant character evidence.

It is well-settled that appellate review is limited to the theory advanced by the defendant in the trial court and that this Court will not consider new theories of relief on appeal. Commonwealth v. Little, 903 A.2d 1269, 1272-73 (Pa. Super. 2006). See also Commonwealth v. Malloy, 856 A.2d 767, 778 (Pa. 2004) (concluding that the appellant had waived his claim of a Fifth Amendment violation because that claim was not the "particular" theory advanced at his suppression hearing); Commonwealth v. Tha, 64 A.3d 704, 713 (Pa. Super. 2013) (reiterating that "failure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal") (citation omitted); Pa.R.E. 103(a) ("A party may claim error in a ruling to admit or exclude only [] if the ruling admits evidence, a party, on the record[,] makes a timely objection . . . and states the specific ground[.]"); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Because Appellant did not object on the basis that

Ms. Alston's testimony was inadmissible as irrelevant or that it was more prejudicial than probative, we find this claim waived.

In his sixth issue, Appellant claims that the trial court erred in permitting Dr. Jennifer Wolford to provide opinion testimony about the marks on S.L.'s face. Appellant's Brief at 27-29. Appellant characterizes Dr. Wolford's testimony that the injuries to S.L.'s face were "likely" caused by "hands or nails" as "pure speculation," and asserts that she did not testify with a reasonable medical certainty. Id. at 27-28 (citing N.T., 9/27/16, at 229). Appellant argues that, because Dr. Wolford's testimony "did not come from a point of medical certainty," the court should have precluded it. Id. at 29. He asserts, without citation to any controlling authority, that the court's alleged error entitles him to a new trial. Id.

Our review of the Notes of Testimony indicates that Appellant has taken one phrase out of context in support of his claim that Dr. Wolford's testimony was speculative and not stated with a "reasonable medical certainty."

When asked by the Commonwealth what "in her expert medical opinion" had caused the marks on S.L.'s face, Dr. Wolford testified as follows:

> So I've been a pediatrician for nine years. And I've seen hundreds of babies. And there is nothing accidental – there are no routine events of reasonable caretakers that results in this type of repeated trauma to a child's face. There's no skin condition that would result in this kind of healing and then reinjury multiple times in different states of healing. Eczema doesn't look like this, chicken pox doesn't look like this. There are no childhood diseases that look like this. This is trauma. And it cut the skin.

And, you know, as I testify, I keep sort of raising my hand to it because it is, my assessment, this is likely hands or nails[.]

N.T., 9/27/16, at 228-29.

Dr. Wolford then specifically testified that she held all of her expressed opinions regarding all three children "to a reasonable degree of medical certainty." Id. at 230.

A review of Dr. Wolford's complete testimony belies Appellant's claim that she did not offer her testimony to a reasonable degree of medical certainty. We agree with the trial court, "[t]he record simply does not support [Appellant's] position." Trial Ct. Op. at 9. We, thus, conclude that the trial court did not abuse its discretion in permitting Dr. Wolford to offer her expert medical opinion about the marks on S.L.'s face. See Kraushaar v. WCAB, 596 A.2d 1233, 1236 (Pa. Cmwlth. 1991) ("Expert testimony must be reviewed in its entirety to determine if it expresses the unequivocality required to be competent evidence.").[14] Cf. Commonwealth v. Smith, 146 A.3d 257, 264 (Pa. Super. 2016) (considering a firearms expert's testimony "in its entirety" in addressing the appellant's sufficiency of the evidence claim).

In his seventh issue, Appellant claims that the trial court erred in permitting Sheena Alston to testify about her abuse as a child. Appellant's Brief at 29. Appellant claims that this evidence was irrelevant and introduced to engender sympathy for her. Id. at 30. Specifically, he asserts that the

---

[14] "Although our Court is not bound by decisions of the Commonwealth Court, we may elect to follow those decisions if we find the rationale of those decisions persuasive." Commonwealth v. Thomas, 814 A.2d 754, 758 n.2 (Pa. Super. 2002) (citations omitted).

sympathy engendered for Ms. Alston by her testimony "makes the jurors more likely to discredit the possibility that Alston was the actual cause of [S.L.'s] death, and wrongfully convict Appellant on this ground, rather than on the evidence presented at trial." Id. at 30-31. Appellant also asserts that, even if relevant, the prejudice to him outweighs the probative value of the evidence. Id.

The trial court explained the context of this testimony and its rationale for permitting it as follows:

> During trial, Ms. Alston informed the jury in general terms about her growing up and being abused by her own father. Prior to the admission of this evidence, the [c]ourt engaged counsel in a discussion of the topic. It was during this exchange[] that the [c]ourt's thinking was set forth. The defense theory was that Ms. Alston was the responsible party for [S.L.'s] death. Evidence that would tend to show otherwise would be helpful to the government's theory. A victim of abuse, the theory goes, would be less likely to be a perpetrator and would react to seeing abuse in a submissive way. Seeing and hearing [Appellant] discipline [Ms. Alston's older daughter] Skylar with physical force, pressed some emotional triggers in Ms. Alston which helped blunt the force of the defense theory that Ms. Alston was more than a government witness, but the true killer. There was no error in admitting this testimony.

Trial Ct. Op. at 7 (citations to the Notes of Testimony omitted).

Following our review of the Notes of Testimony, we agree with the trial court's conclusion that this evidence was relevant to explain why Ms. Alston tolerated Appellant's abuse of her and her children without taking action. With respect to Appellant's claim that the alleged prejudice caused by Ms. Alston's testimony outweighed its probative value, we note that the trial court

- 20 -

considered this objection at trial and determined that, to prevent the potential prejudice to Appellant, it would limit her testimony. N.T., 9/29/16, at 489. In particular, the court permitted Ms. Alston to testify only that her father had physically and sexually abused her when she was between the ages of five and 16 and that, eventually, the Commonwealth convicted her father of those crimes. See id. at 495 (explaining that Ms. Alston could testify "about the abuse, who abused her, and even where he is right now"). Moreover, the court provided a specific and detailed limiting instruction to the jury and we presume that the jury has followed that instruction. Commonwealth v. Roney, 79 A.3d 595, 640 (Pa. 2013). Accordingly, we conclude that the trial court properly exercised its discretion in permitting Ms. Alston to testify about her history as an abuse victim.

In his ninth issue, Appellant claims that the court erred in overruling his objection to Ms. Alston's testimony that police had arrested Appellant on marijuana charges on the night before S.L. was born. Appellant's Brief at 32-34. Appellant argues that this evidence is irrelevant to the murder charge. Id. at 34. While Appellant concedes that the court provided the jury with an instruction limiting it to considering this evidence to appreciate Ms. Alston's state of mind, he argues that his "marijuana use and arrest had no relevance in aiding the jury in determining what that state of mind was." Id.

The Commonwealth asserted that evidence of Appellant's arrest was relevant to explain the change in his behavior and temperament, which the Commonwealth alleged manifested in, among other ways, the physical abuse

of S.L. Commonwealth's Brief at 53. It alleged that Appellant's behavior and temperament in the time leading up to S.L.'s death were highly relevant to proving that he killed S.L. through repeated physical abuse over the five weeks of her life.

In particular, Ms. Alston testified that around the time of S.L.'s birth, police arrested Appellant "on something to do with marijuana." N.T. 9/29/16, at 511. She further testified that, upon returning home from delivering S.L., Appellant wanted her to help him prepare for a court date related to his arrest. Id. at 518. She testified that when she was unable to help Appellant in the way he wished, he became "very agitated. Irate. He would throw things. He broke windows. He just was not accepting the fact that I wasn't doing what he wanted me to do." Id. at 518-19.

Notwithstanding Appellant's claims of irrelevance and undue prejudice, the trial court concluded that this "evidence was relevant as it provided a foundation for, as Ms. Alston described, a rather drastic change in demeanor and attitude by [Appellant]." Trial Ct. Op. at 7. The trial court found the probative value of Ms. Alston's testimony in this respect to outweigh its potential for unfair prejudice. Id. at 7-8.

Furthermore, the court provided the following limiting instruction to the jury:

> I would caution you, you can't allow this arrest to affect your perception of [Appellant's] guilt or innocence with any of the charges that are relevant in this case. I'm only allowing this for the purpose of the sequence of events that may have affected her during this prior to birth. It's only for [] you to get [Ms. Alston's]

state of mind. But it's not to be interpreted as any evidence of [Appellant's] guilt for any other crime.

N.T., 9/29/16, at 511.

We discern no abuse of discretion in the trial court's decision to permit Ms. Alston to testify about Appellant's arrest on the night prior to S.L.'s birth to explain his contemporaneous change in behavior and Ms. Alston's state of mind. See Commonwealth v. Dillon, 925 A.2d 131, 137 (Pa. 2007) (explaining the "res gestae exception to Rule 404(b) which allows admission of other crimes evidence when relevant to furnish the context of the complete story of the events surrounding [the] crime."). Moreover, the court provided a specific and detailed limiting instruction to the jury and we presume that the jury has followed that instruction. Roney, 79 A.3d at 640. Accordingly, this claim merits no relief.

In his tenth issue, Appellant claims the trial court erred in overruling his objection to the jury hearing the recorded call that Sheena Alston placed to 9-1-1, which also recorded Alston performing CPR on S.L. Appellant's Brief at 34. Appellant objected to the jury hearing the tape, alleging that it was prejudicial, lacking in probative value, and was "distracting to the jury from what their job is." N.T., 9/29/16, at 553. The Commonwealth explained that it sought to introduce into evidence and play the recording to the jury to undermine Appellant's claim that it was Appellant who had called 9-1-1 and performed CPR on S.L. Id. at 554. The court overruled the objection and permitted the jury to hear the recording, concluding, inter alia, that the

recording was relevant to refute Appellant's defense that Ms. Alston "did it" and "was indifferent" to S.L.'s death. Id. at 555.

Here, Appellant asserts that it was unreasonable and an abuse of discretion for the trial court to play the recorded 9-1-1 call to the jury, alleging that it lacked probative value and was overwhelmingly prejudicial. The trial court rejected this claim in its Pa.R.A.P. 1925(a) Opinion. See Trial Ct. Op. at 9. However, the Commonwealth has observed, and we have confirmed, that the certified record does not contain the recorded 9-1-1 call to which Appellant objects.[15] See Commonwealth's Brief at 55. In light of Appellant's failure to ensure the completeness of the certified record, we are unable to assess Appellant's description of the recording and his claim. See Powell, 956 A.2d 423. Appellant has, thus, waived review of this claim.

Sufficiency of the Evidence

In his eleventh and twelfth issues, Appellant challenges the sufficiency of the Commonwealth's evidence. We, thus, address these issues together. First, Appellant contends that the Commonwealth failed to present sufficient evidence of Appellant's intent to kill S.L. to support his third-degree murder conviction. Appellant's Brief at 36-38. Next, he claims the Commonwealth

_____

[15] The 9-1-1 call is not transcribed in the Notes of Testimony. The Commonwealth marked the CD recording of the call as Commonwealth Exhibit 102, and the Certified Transcript of the recording as Commonwealth Exhibit 103, and the trial court admitted them as such. N.T., 9/29/16, at 553, 555-56.

failed to present sufficient evidence that he acted with sufficient malice toward S.L. to support his conviction. Id. at 38-40.

"A claim challenging the sufficiency of the evidence is a question of law." Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Commonwealth v. Miller, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." Id. "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." Id.

Here, the jury convicted Appellant of Third-Degree Murder and acquitted him of First-Degree Murder. Our Crimes Code defines three degrees of homicide. See 18 Pa.C.S. §§ 2501, 2502. To convict a defendant of Third-Degree Murder provided in Section 2502(c), the Commonwealth "need only prove that the defendant killed another person with malice aforethought." Commonwealth v. Santos, 876 A.2d 360, 363 (Pa. 2005). "This Court has long held that malice comprehends not only a particular ill-will, but … [also a] wickedness of disposition, hardness of heart, recklessness of consequences,

and a mind regardless of social duty, although a particular person may not be intended to be injured." Id. (emphasis, citation and internal quotation marks omitted). "The act sufficient for third degree is still a purposeful one, committed with malice, which results in death[.]" Commonwealth v. Fisher, 80 A.3d 1186, 1191 (Pa. 2013).

A finding of malice based on a "recklessness of consequences" requires that "a defendant be found to have consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury." Commonwealth v. Scales, 648 A.2d 1205, 1207 (Pa. Super. 1994) (citing Commonwealth v. Fierst, 620 A.2d 1196, 1203 (Pa. Super. 1993).

The trial court addressed Appellant's claim that the Commonwealth failed to present sufficient evidence of his specific intent to kill as follows:

> Under Pennsylvania law, third[-]degree murder does not require a specific intent to kill but does require that one act with malice. So, [Appellant's] push in this appeal that the government's evidence did not show the necessary "specific intent to kill" is supported by the jury's not guilty verdict. The jury agreed with his argument. He has nothing to complain of here because he was convicted of third[-]degree murder which does not demand the government prove specifc intent to kill.

Trial Ct. Op. at 11 (citations omitted and some emphasis added).

We agree with the trial court that the Crimes Code did not require the Commonwealth to prove Appellant acted with the intent to kill S.L. in order for the jury to convict him of Third-Degree Murder. The jury acquitted Appellant of the only charge—First-Degree Murder—that would have required

the Commonwealth to prove that Appellant acted with specific intent. Accordingly, this claim fails.

With respect to Appellant's claim that the Commonwealth failed to prove that he acted with malice in causing S.L.'s death, the trial court opined as follows:

> [Appellant's] jury was instructed as to what the term "malice" meant in a third[-]degree case. "A killing is with malice if the perpetrator's actions show wanton and willful disregard of an unjustified and extremely high risk that his conduct would result in death . . . ." That standard was met here. The defense tried to pin the homicide on the mother, Ms. Alston. That theory gained no ground. The first third[-]party witness in [Appellant's] house that morning was a paramedic. He explained how Ms. Alston was administering CPR. The 9-1-1 call also showed it was Ms. Alston who made that call. The inference from these two facts is that Ms. Alston was not the killer. [Appellant] himself corroborated those facts when he told law enforcement that [Ms. Alston] did not harm the baby.
>
> Babies cry. [S.L.] was no different. She cried. [Appellant] got quite agitated when she did. After telling this newborn to "shut up," [Appellant] held the child in his arm with her face down in his palm. He would bounce her up and down. Ms. Alston said it was too rough and too hard. The medical evidence confirmed this. There were plenty of areas of her back that showed hemorrhaging of the tissues of the skin. [S.L.] had a broken forearm and fractured rib. The latter would require a significant amount of force. There were numerous marks on her face. All in various stages of healing and all consistent with fingernails being the means of infliction. All of her injuries were inflicted by another person. The young girl "died as a result of abusive trauma of the head, trunk[,] and extremities" along with "pneumonia" as a contributory cause. That is what the medical examiner said.
>
> But it was Dr. Eric Vey who provided valuable insight into this child's life of 5 weeks. At birth, the child's weight was at the 10th percentile. At death, she was at the 3rd percentile. At birth, the child's head was at the 10th percentile. At death, it was at the 3rd

percentile.  Combining her weight and length at birth she was at the 25th percentile.  Upon her death, she was at the 3rd percentile. Coupled with an autopsy report that showed no natural disease or conditions that would explain this, Dr. Vey told the jury the child was using her energy to repair her injuries and not for normal growth and development purposes.  When this happens, the child becomes more susceptible for infection such as pneumonia.  Dr. Vey reached the conclusion that [S.L.] died as a result of malnutrition, inanition[,] and dehydration with pneumonia with blunt force trauma as a contributing factor.

[Appellant] was the person responsible for starting a chain of events.  His actions were knowing.  His actions led to the death of his daughter.  His actions were with "malice."

Trial Ct. Op. at 12-13.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, as we must, our review confirms that the Commonwealth presented overwhelming evidence from which it was reasonable for the jury to find that Appellant—S.L.'s primary caregiver—"consciously disregarded an unjustified and extremely high risk that his actions might cause [S.L.'s] death or serious bodily injury. " Accordingly, Appellant's sufficiency challenge fails to merit relief.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/2019