**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEE RICHARD ENDERLE | : | |
| | : | |
| Appellant | : | No. 971 EDA 2020 |

Appeal from the PCRA Order Entered March 5, 2020,
in the Court of Common Pleas of Chester County,
Criminal Division at No(s):  CP-15-CR-0002900-2013.

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED:  MAY 14, 2021**

Lee Richard Enderle appeals *pro se* from the order denying in part and granting in part his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-46.  We reverse the PCRA court's order, and remand for an evidentiary hearing.

The pertinent facts and protracted procedural history[1] are as follows: Enderle was charged with multiple sexual offenses following an incident with his seven-year old neighbor.  The trial court appointed a public defender to represent Enderle, and trial counsel entered her appearance as Enderle's

---

[1] Throughout these proceedings, Enderle has been at odds with his appointed counsel, and has filed multiple *pro se* motions, at times sending them directly to the trial court.  This has made our review of the certified record difficult. In the above summary, we highlight only these filings, as well as those filed by counsel, that are relevant to the issues Enderle raises on appeal.

counsel on August 29, 2013. Thereafter, the parties engaged in discovery and plea negotiations.

On April 18, 2014, trial counsel filed a *habeas corpus* petition on Enderle's behalf, in which Enderle claimed the evidence presented by the Commonwealth at his preliminary hearing did not establish a *prime face* case as to some of his charges. On May 6, 2014, the Commonwealth filed a motion to permit the victim to testify by contemporaneous alternative method pursuant to 42 Pa.C.S.A. section 5985. The trial court scheduled a hearing on both motions for May 7, 2014.

At this hearing, the trial court decided that it would first determine the Commonwealth's motion.[2] The victim's mother testified about how the victim's behavior had changed since the incident, and the trial court interviewed the victim.[3] Considering all of this evidence, the trial court concluded that if the victim "had to testify in the presence and full view of

_____

[2] Initially, the trial court discussed with the parties a letter it received from Enderle in which Enderle complained about trial counsel. At that time, Enderle informed the court of his concerns. Ultimately, he informed the court that, "at this moment," he was satisfied being represented by trial counsel. N.T., 5/7/14, at 74. However, after trial counsel stated that she would not contest some of the charges, Enderle objected and requested a change of counsel. *Id.* at 77-78. The trial court denied this request, but later informed Enderle "to think long and hard" about proceeding without a lawyer. *Id.* at 96.

[3] The Commonwealth also informed the trial court of the substance of the victim's therapist proposed testimony. The Commonwealth had not asked her to appear given its belief that its motion was unopposed. *See* N.T., 5/7/14, at 29-30.

[Enderle] it would result in her suffering serious emotional distress that would substantially impair her ability to communicate." N.T., 5/7/14, at 30. The trial court then allowed the victim to testify via a contemporaneous alternative method for the purpose of considering Enderle's *habeas* motion. At the hearing's conclusion, the trial court denied Enderle's motion.

On June 4, 2014, the trial court held a pre-trial hearing on several matters, including a *pro se* "PCRA Ineffective Assistance of Counsel" motion filed by Enderle, in which he expressed his desire to dismiss trial counsel and have a different attorney appointed. Following a thorough colloquy by the trial court, Enderle was permitted to proceed *pro se*. **See** N.T., 6/4/14, at 29. The court and the parties then discussed the possibility of Enderle personally cross-examining the witness at trial. The trial court asked the parties to research the topic and determined the issue would be revisited at trial.

On July 31, 2014, the court held a pre-trial hearing to determine whether the victim would be allowed to testify via a contemporaneous alternative method at trial. At this hearing, the Commonwealth presented the testimony of the victim's mother and Kathy O'Connell, a therapist who had been treating the victim for eight months. Ms. O'Connell testified that the victim was referred to her for treatment after a psychiatrist diagnosed as suffering from post-traumatic stress disorder. **See** N.T., 7/31/14, at 28. According to Ms. McConnell, requiring the victim to testify in Enderle's presence, or permit him to cross-examine her would act as a "trigger" and cause her to relive her trauma. **See id.** at 40-41.

After hearing this evidence, and hearing argument from the Commonwealth and *pro se* argument from Enderle, the trial court concluded:

> I find that their testimony has established that for this victim to testify in [Enderle's] presence, that would result in this child victim suffering serious emotional distress, that would substantially, impair this child victim's ability to reasonably communicate and the interfering with her ability to communicate. Both witnesses felt that she would not be able to testify about what she allegedly experienced. If she was in front of [Enderle], **or if he were allowed to ask her questions**, she would not be able to reasonably communicate.
>
> ***
>
> So having found the child [victim] will suffer serious emotional distress, and that would substantially impair the child victim to reasonably communicate, I am granting the Commonwealth's motion for testimony by contemporaneous alternative method.

N.T., 7/31/14, at 75-77 (emphasis added).

The trial court informed Enderle that he "still [had] the right to present questions to [the victim]. It's just she will not her your voice." **Id.** at 77-78. The court then appointed prior trial counsel to act as standby counsel, and a method was determined whereby any questions Enderle wished to ask the victim would be communicated to standby counsel. In response, Enderle persisted that refusing to permit him to cross-examine the victim directly violated his constitutional rights of confrontation and due process.

When Enderle's trial began, he requested that trial counsel represent him. Trial counsel requested a continuance so that she could further prepare. The trial court denied this request, and Enderele's trial began with trial counsel

and another assistant public defender acting as co-counsel. Following a four-day trial, a jury convicted him on all of the charges. On March 6, 2015, the trial court sentenced him to an aggregate term of nine to eighteen years of imprisonment and a consecutive ten-year probationary term. The trial court denied Enderle's timely post-sentence motion. Although Enderle originally filed a notice of appeal to this Court, he later discontinued it by order entered August 5, 2016.

On April 20, 2017, Enderle filed a timely *pro se* PCRA petition in which he raised multiple claims of trial court error, asserted that 42 Pa.C.S.A. § 5985 (relating to testimony by contemporaneous alternative method) was unconstitutional, and claimed the Commonwealth violated ***Brady v. Maryland***, 373 U.S. 83 (1963). In addition, he claimed trial counsel was ineffective for: 1) failing to impeach the victim with inconsistent statements; 2) not objecting to testimonial hearsay and videos of forensic interviews by police; and 3) not objecting to a Commonwealth's witness reading his police statement out loud as part of his trial testimony. The PCRA court appointed counsel.

On August 18, 2017, PCRA counsel filed a motion to withdraw and "no-merit" letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Enderle filed a *pro se* response. By order entered September 20, 2017, the PCRA court directed PCRA counsel to review Enderle's response and then either file an amended petition or a supplemental ***Turner***/***Finley*** letter.

PCRA counsel filed a second motion to withdraw and supplemental *Turner*/*Finley* letter on October 20, 2017. Thereafter, Enderle filed another *pro se* response.

On November 5, 2018, the PCRA court issued a Pa.R.A.P. 907 notice of its intent to dismiss Enderle's PCRA petition without a hearing. Enderle filed a timely response.

On April 29, 2019, Enderle filed a *pro se* supplemental PCRA petition in which he asserted that his designation as a sexually violent predator (SVP) was unconstitutional given this Court's decision in *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017), *reversed* 226 A.3d 972 (Pa. 2020). In this filing, Enderle further contended that his trial counsel was ineffective for conceding his guilt of some of the charges during her closing argument without his consent, pursuant to *McCoy v. Louisiana*, 138 S.Ct. 1500 (2018). Once again, the PCRA court directed PCRA counsel to review Enderle's *pro se* filing and either file an amended PCRA petition or proceed with his petition to withdraw and submit another supplemental *Turner*/*Finley* letter.

On July 1, 2019, PCRA counsel filed an amended petition in which Enderle raised the sole contention that his designation as an SVP constituted an illegal and unconstitutional sentence. In a footnote, PCRA counsel also discussed Enderle's reliance upon *McCoy*, *supra*, for the proposition that "a defendant has a right under the Sixth Amendment of the United States Constitution to insist that his counsel refrain from admitting his guilt, even if counsel had a reasonable strategy for doing so." *See* Amended Petition,

- 6 -

7/1/19, at 7 n.3. According to PCRA counsel, this claim had no merit because an attorney cannot be declared ineffective for failing to anticipate a change in the law, and because neither the federal or state supreme court has held that the **McCoy** ruling applies retroactively. **See id.**

On July 12, 2019, Enderle filed a motion to compel a hearing, in which he essentially asserted PCRA counsel's ineffectiveness and his desire to have a **Grazier** hearing.[4] In a supplemental answer, the Commonwealth conceded that Enderle's SVP designation should be vacated and a hearing held for the sole purpose of issuing the appropriate registration notice. Enderle filed a response.

Following a **Grazier** hearing on October 18, 2019, the PCRA court permitted PCRA counsel to withdraw and appointed new counsel ("second PCRA counsel"). On February 18, 2020, second PCRA counsel filed a petition to withdraw and a **Turner**/**Finley** "no-merit" letter. In an order entered March 5, 2020, the PCRA court denied Enderle post-conviction relief.[5] Additionally,

---

[4] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

[5] The PCRA court issued its order denying Enderle's PCRA petition without again issuing a Rule 907 notice of its intent to do so. On March 18, 2020, Enderle filed a document entitled "Nuc [sic] Pro Tunc" in which he noted that the PCRA court did not issue Rule 907 notice, and reiterated claims regarding first PCRA counsel. On that same date, Enderle also filed a motion for another **Grazier** hearing, as well as a Rule 907 response, in which he asserted that second PCRA counsel was ineffective for failing to raise four issues in an amended PCRA. Enderle attached to his response a letter he had sent second PCRA counsel identifying these issues. Enderle also filed a *pro se* amended PCRA petition.
*(Footnote Continued Next Page)*

- 7 -

upon the agreement of the Commonwealth, the PCRA court granted Enderle's amended petition insofar as the court vacated Enderle's SVP designation and scheduled a hearing for April 27, 2020. Finally, the PCRA court granted second PCRA counsel's request to withdraw. This timely *pro se* appeal followed. The PCRA court did not require Pa.R.A.P. 1925 compliance.

Enderle raises the following five issues on appeal:

1) Was [second PCRA counsel] ineffective for not raising four (4) issues in [Enderle's PCRA]?

2) Were both post-sentencing and direct appeal [counsel] ineffective for not raising a structural error in [Enderle's] appeal proceeding?

3) Were both post-sentencing and direct appeal [counsel] ineffective for not raising how 42 Pa.C.S.A. § 5985 is unconstitutional to a [*pro se*] litigant in [Enderle's] appeal proceeding[?]

4) Was trial counsel ineffective for conceding guilt upon [Enderle] during closing argument, violating A.B.A. Model Rule of Professional Conduct 1.2(a) which violated [his] autonomy rights and denied [Enderle] a fair trial under [the federal and state constitutions]?

5) Did the trial court [err] by forcing [Enderle] to trial without the effective aid and assistance of counsel?

Enderle's Brief at unnumbered 7 (excess capitalization and citations to brief omitted).

_____

By order entered April 29, 2020, the PCRA court issued Rule 907 notice of its intent to dismiss Enderle's amended petition as an untimely second PCRA petition. In addition, the PCRA court denied Enderle's additional filings.

Our scope and standard of review is well settled:

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015)

(citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

To be eligible for relief pursuant to the PCRA, a petitioner must establish, *inter alia*, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S.A. § 9543(a)(2). In his first four issues, Enderle raises claims involving the ineffective assistance of counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the

evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." **Id.** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. **Id.** at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Id.** A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. **Commonwealth v. Martin**, 5 A.3d 177, 183 (Pa. 2010).

Central to Enderle's first three claims of ineffectiveness of counsel, is the assertion that prior counsel, including second PCRA counsel, were ineffective for failing to raise and/or preserve his assertion that refusing to permit him to cross-examine the victim at trial violated his constitutional rights of confrontation, as well as challenging as unconstitutional 42 Pa.C.S.A. section 5985 when applied to a *pro se* litigant. As to second PCRA counsel's ineffectiveness, we note that Enderle arguably preserved this claim below. **See** n.5, **supra**. Regarding post-sentence and direct appeal counsel, Enderle

has not properly raised a layered claim of ineffective assistance of counsel. *See generally*, *Commonwealth v. McGill*, 832 A.2d 1014 (Pa. 2003).

Nevertheless, we conclude that Enderle has failed to establish that either of his substantive claims are of arguable merit.

Enderle asserts his right to confrontation and due process was violated. In *Commonwealth v. Tighe*, 184 A.3d 560 (Pa. Super. 2018), the defendant represented himself at trial and was found guilty of various sex offenses perpetuated against a fifteen-year-old victim. As was proposed in this case, the trial court required standby counsel to cross-examine the victim and ask her all questions on Tighe's behalf by using written questions prepared in advance by Tighe prior to cross-examination.

Among the multiple issues he raised in a counseled appeal, Tighe asserted that the trial court violated his Sixth Amendment under both the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution by refusing to allow him to personally cross-examine the victim. This Court recognized the constitutional right at issue as the right of self-representation:

> Succinctly stated, [Tighe] argues that the right to represent himself necessarily includes the right to act as attorney for all purposes, and cannot be limited. [Tighe] also notes that requiring [standby] counsel to ask the questions amounts to hybrid representation, which is impermissible.

*Tighe*, 184 A.3d at 566.

- 11 -

Before addressing Tighe's substantive claim, this Court noted that "[Tighe] explicitly distance[d] himself from the analysis offered by the Commonwealth and the trial court, which focused on the Sixth Amendment right of confrontation." *Id.* Nevertheless, because "other jurisdictions that have considered this issue has drawn parallels to that right, we begin our analysis there." *Id.*

This Court then discussed thoroughly federal decisions stating that the constitutional right to confrontation is not absolute and discussing limitations that could be placed on that right. In particular, we discussed the United States Supreme Court in *Maryland v. Craig*, 497 U.S. 836 (1990):

> *Craig* determined that a "State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." [*Craig*, 497 U.S. at 853]. Simultaneously, the Court required "an adequate showing of necessity" to justify the use of the procedure, which "of necessity must of course be a case-specific one[.]" *Id.* at 855[.] The mere fact that face-to-face confrontation is generically traumatic and unpleasant was not sufficient. As to the second component, that the reliability of the testimony is otherwise assured, the Court determined that the [Maryland statute at issue] protected
>
>> all of the other elements of the confrontation right: The child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies. Although we are mindful of the many subtle

> effects face-to-face confrontation may have on an adversary criminal proceeding, the presence of these other elements of confrontation—oath, cross-examination and observation of the witness' demeanor—adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony.

> *Id.* at 851[.]

*Tighe*, 184 A.3d at 567-68 (footnote omitted).

In *Tighe*, this Court recognized that *Craig* was a case involving the confrontation clause and did not address the right to self-representation. We then discussed *Fields v. Murray*, 49 F.3d 1024 (4th Cir. 1995) (*en banc*), in which the United States Court of Appeals for the Fourth Circuit "held that a court could properly prevent a *pro se* defendant from cross-examining the child victims where the defendant conceded that the motivation for representing himself was to cross-examine the victims." *Tighe*, 184 A.3d at 568. This Court then cited *Fields*' reasoning that "[i]f a defendant's Confrontation Clause right can be limited in the manner provided in *Craig*, we have little doubt that a defendant's self-representation right can be similarly limited." *Id.* We then quoted the following from *Fields*:

> Fields' self-representation right could have been properly restricted by preventing him from cross-examining personally some of the witnesses against him, which is one "element" of the self-representation right, if, first, the purposes of the self-representation would have otherwise been assured and, second, the denial of such personal cross-examination was necessary to further an important public policy.

*Id.*

In *Tighe*, this Court further recognized that the *Fields* court "noted that the purpose of self-representation was 'to allow the defendant to affirm [his] dignity and autonomy' and to present what he believes is his best possible defense." *Tighe*, 184 A.3d at 568 (quoting *Fields*, 49 F.3d at 1035). As we explained, however:

> [*Fields*] recognized that the defendant's dignity and autonomy were obviously limited by preventing personal cross-examination, thus affecting the jury's perception that he was representing himself. However, the court determined that this restriction only "reduced slightly" his ability to present a chosen defense. That ability was
>
> > otherwise assured because he could have personally presented his defense in every other portion of the trial and could have controlled the cross-examination by specifying the questions to be asked. As a result, we are convinced that the purposes of the self-representation right were better "otherwise assured" here, despite the denial of personal cross-examination, than was the purpose of the Confrontation Clause right in *Craig* when the defendant was denied face-to-face confrontation with the witnesses.
>
> *Id.* at 1035-36.

*Tighe*, 184 A.3d at 568-69.

In *Tighe*, we further noted that, in "[a]ddressing the second aspect of *Craig*, the State's interest, the court determined that since *Craig* held that the interest in the physical and psychological well-being of child abuse victims could outweigh the right to face-to-face confrontation, it followed that the right to self-representation could be limited for the same reason. *Id.* at 569.

After discussing the above holdings, this Court in *Tighe* again noted that, because Tighe did not claim a deprivation of his Confrontation Clause rights, the only question to be addressed was "whether the principle announced in *Craig*, which permitted a procedure that limited the Confrontation Clause rights due to the countervailing interests of the victim when the procedure otherwise preserved the reliability of the cross-examination, should be adopted in this Commonwealth as a permissible restriction on the right of self-representation." *Tighe*, 184 A.3d at 569.

This Court answered this question in the affirmative. After discussing and rejecting arguments from case law relied upon by Tighe, this Court concluded:

> We are persuaded by the analysis set forth in *Fields* that, if the constitutional right of confrontation can be limited on the basis of emotional trauma to the victim, then it follows that the same State interest serves to justify the restriction at issue. Indeed, the fact that *Craig* permitted a limitation of actual face-to-face confrontation suggests that the lesser intrusion herein, where [the victim] was subjected to [cross-examination by standby counsel, while in the same courtroom as Tighe,] is permissible. Additionally, we find that this intrusion did not affect the jury's perception that [Tighe] was representing himself[.] With the exception of this one witness, [Tighe] cross-examined all other witnesses, made opening and closing statements, and otherwise presented his own defense according to his wishes.

- 15 -

*Tighe*, 184 A.3d at 571 (footnote omitted). Because this Court determined that Tighe's constitutional rights were not violated, we held that the trial court did not err in preventing him from personally cross-examining the victim.[6]

Here, by contrast, Enderle chose to have trial counsel represent him, and trial counsel and co-counsel always represented him prior to the jury's verdicts. Enderle challenges the denial of his ability to cross-examine the victim as violative of both his confrontation rights and his right to self-representation. Unlike the facts of *Tighe*, however, there exists ample evidence in the certified record to support the trial court's ruling that the seven-year-old victim suffered from Post Traumatic Stress Disorder following the incident such that permitting Enderle to personally cross-examine the victim would cause further emotional trauma to her. Thus, the facts of this case present even a stronger basis to affirm the proposed limitations placed upon Enderle's *pro se* right to confront and cross-examine the victim.

Moreover, since the same method would have been used had Enderle chose to represent himself at trial, his right to self-representation was not violated. *Tighe*, *supra*. Unlike the situation in Enderle's trial, the fifteen-

---

[6] Our Supreme Court granted allowance of appeal in *Tighe*, and, in a plurality decision, affirmed, albeit on an alternative basis—that no constitutional violation occurred because Tighe forfeited his right to personally cross-examine the victim after he willfully violated his bail conditions by contacting her prior to trial and imploring her not to pursue his prosecution of sex offenses he committed upon her. *Commonwealth v. Tighe*, 224 A.3d 1268, 1280-82 (Pa. 2020).

year-old victim in *Tighe* did not testify via an alternative contemporaneous method. Nevertheless, given the discussion of the right to confrontation and self-representation by this Court in *Tighe*, *supra*, Enderle's related claim of ineffectiveness regarding the unconstitutional application of 42 Pa.C.S.A. section 5985 to a *pro se* litigant is also is without merit. Thus, Enderele's first three issues fail.

In his fourth issue, Enderle asserts that trial counsel was ineffective for conceding his guilt during her closing argument. Although Enderle raised this issue in his supplemental PCRA motion, both his second PCRA counsel, and the first attorney who filed two *Turner*/*Finley* letters previously, *see infra*, concluded that this claim lacked merit because the case Enderle relied upon to support his claim, *McCoy v. Louisiana*, 138 S.Ct. 1500 (2018), was decided after his jury trial. The PCRA lawyers believed trial counsel could not be found ineffective for failing to anticipate a change in the law. In addition, both attorneys asserted that neither the federal nor state supreme court have applied *McCoy* retroactively. The Commonwealth and the PCRA court reach the same conclusion.

We disagree. As explained more fully below, *McCoy* did not constitute a change in the law, and Enderle had raised his claim of ineffectiveness regarding a violation of his right to autonomy in a timely PCRA petition. Thus,

we address the merits of the claim. *See generally Commonwealth v. Ruiz*, 131 A.3d 54 (Pa. Super. 2015).[7]

In *McCoy*, *supra*, the United States Supreme Court held that under the Sixth Amendment, a defendant has a right to insist that his counsel refrain from conceding guilt during the guilt phase of a capital trial, even when the attorney reasonably believes the concession is an essential part of a strategy to avoid the death penalty. *McCoy*, 138 S.Ct. at 1509. The *McCoy* court also determined that allowing a defendant's attorney to proceed with that strategy over his client's objections was a structural error on the part of the trial court that entitled McCoy to a new trial and did not necessitate a finding of prejudice. *Id.* at 1511.

Moreover, the *McCoy* decision did not constitute a change in the law. As our Supreme Court has stated:

> [O]nly a criminal defendant has the authority to concede criminal liability and authorize counsel to present a defense of diminished capacity. Counsel cannot do so over the objections of a client who maintains his innocence. *Commonwealth v. Weaver*, ___ Pa. ___, 457 A.2d 505, 506-7 (1983) (holding that even if diminished capacity was the only viable defense, trial counsel would be deemed ineffective for presenting this defense without consent of the defendant).

---

[7] We reject the Commonwealth's claim that Enderle has waived this issue because he never raised this issue with the PCRA court during his PCRA proceedings. As summarized above, however, Enderle did raise the issue, but both PCRA counsel found it to be without merit. Additionally, we note that the PCRA court addressed the issue. Given these circumstances, we decline to find waiver.

***Commonwealth v. Weiss***, 81 A.3d 767, 798 (Pa. 2013). Further, a recent

panel of this Court explained:

> [A] defendant's "secured autonomy" under the Sixth Amendment is not a "new" constitutional right. ***See***, ***e.g.***, ***Florida v. Nixon***, [543 U.S. 175 (2004)] (recognizing defendant's ultimate authority to decide whether to plead guilty, waive jury trial, testify in his own defense, or take appeal); ***Faretta v. California***, [422 U.S. 806 (1975)] (explaining Sixth Amendment grants to accused personally right to make his own defense; Sixth Amendment speaks of "assistance" of counsel; "assistant," however expert, is still assistant). ***McCoy*** simply applied a defendant's well-rooted Sixth Amendment right to autonomy to a new set of circumstances.

***Commonwealth v. Hoffman***, 2020 WL 200838 at *2 (Pa. Super. 2020)

(unpublished memorandum).[8]

Finally, because a concession of guilt by counsel over a defendant's

objection constitutes "structural error," Enderle's issue poses a pure question

of law, to which we apply a *de novo* standard of review. ***See Commonwealth***

***v. Tejada***, 188 A.3d 1288, 1292-93 (Pa. Super. 2018).

Here, Enderle did not testify at trial. Our review of his multiple filings

in this case establishes that Enderle has consistently maintained his innocence

of all the charges, and at no time authorized trial counsel to concede

otherwise. In her closing argument, however, trial counsel stated:

---

[8] ***See*** Operating Procedures of the Superior Court, § 65.37B (providing "[n]on-precedential decisions filed after May 1, 2019, may be cited for their persuasive value).

> At the beginning of this case, I also told you that Mr. Enderle was innocent unless the prosecution proves beyond a reasonable doubt that he is not, and that was true. And what I will say to you now is I believe the Commonwealth has met their burden on some of these charges, but certainly not all of the charges.

N.T., 8/7/14, at 74. A violation of Enderle's "secured autonomy" under the Sixth Amendment could not be clearer.

Thus, we conclude that Enderle has raised a material issue of fact—whether he consented to trial counsel's concession of guilt to some of the charges the Commonwealth filed against him. Because resolution of this fact involves a credibility assessment, and the PCRA court dismissed the claim without a hearing, we remand this matter so that the PCRA court can hold an evidentiary hearing, as to only this issue, after which it can make the required factual and credibility determinations, and grant post-conviction relief if appropriate. *See Commonwealth v. Shaw*, No. 21 MAP 2020, at 15-16 (Pa., March 25, 2021) (reversing this Court's grant of a new trial based upon a meritorious post-conviction issue, and remanding to the PCRA court as the proper "forum for the evidentiary and factual development" of the claim).[9] The PCRA court shall appoint new counsel for Enderle.

Order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

---

[9] Given this disposition we need not address Enderle's fifth issue, in which he essentially reiterates his claim regarding trial counsel conceding his guilt to some of the charges.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/21